**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0626-16T3

STATE OF NEW JERSEY,

Plaintiff-Respondent,

v.

HUGUES FRANCOIS, a/k/a JACKIE FRANCOIS, JACQUES FRANCOIS, and JACK FRANCOIS,

Defendant-Appellant.

---

Submitted May 8, 2018 – Decided June 6, 2018

Before Judges Yannotti and Mawla.

On appeal from Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 08-10-1788.

Joseph E. Krakora, Public Defender, attorney for appellant (Charles H. Landesman, Designated Counsel, on the brief).

Dennis Calo, Acting Bergen County Prosecutor, attorney for respondent (Jenny X. Zhang, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant appeals from an order dated June 10, 2016, which denied his petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

I.

Defendant was charged under Bergen County Indictment No. 08-10-1788 with first-degree murder of Thalia Stathis (Stathis), N.J.S.A. 2C:11-3(a)(1) or (2) (count one); second-degree disturbing or removing human remains, N.J.S.A. 2C:22-1(a)(1) (count two); third-degree forgery, N.J.S.A. 2C:21-1(a)(2) and (3) (counts three and four); fourth-degree theft by deception, N.J.S.A. 2C:20-4 (count five); third-degree hindering apprehension, N.J.S.A. 2C:29-3(b)(1) (count six); fourth-degree violation of sex offender registration requirements, N.J.S.A. 2C:7-2(d) (count seven); and third-degree failure to register as a sex offender, N.J.S.A. 2C:7-2(a)(3) (count eight). Counts seven and eight were severed for trial. Counts one through six were tried before a jury.

At the trial, evidence was presented which indicated that Stathis met defendant in 2005, at her parents' diner where she worked as a waitress. They developed a relationship, and she worked six days a week while defendant did not have a steady job or income. Soon thereafter, Stathis moved out of her parents' house

and moved into an apartment. Her relationship with her parents also became strained.

On September 7, 2007, Stathis told her mother she was going to end her relationship with defendant and that she wanted to come back home. On September 10, 2007, Stathis met her mother at a local restaurant and told her she had broken up with defendant and did not want to see him again. Stathis then returned to work.

Stathis was last seen at work on September 13, 2007. That evening, she told two co-workers she was going to leave defendant. She also told one of her co-workers she intended to return to her apartment to pick up some clothes. Thereafter, Stathis went missing. When Stathis' co-workers realized she was absent from several shifts in a row, and no one could get in touch with her, they contacted the police.

On September 26, 2007, Cliffside Park police officers went to Stathis' apartment to check on her. There, they spoke with defendant, who informed the police the apartment belonged to Stathis and he was living there. Defendant was arrested on charges unrelated to Stathis' disappearance. Defendant was transported to the Cliffside Park police station, where he signed a consent-to-search form for his automobile.

Officer Marc Moschella conducted a search of defendant's vehicle. He testified the car was missing carpet padding on the

left side of the trunk and a plate that covers the spare tire. During the search, the police recovered two of Stathis' prescriptions from an oral surgeon, her AT&T phone bill, and her ATM card.

Detective James Brazofsky of the homicide unit of the Bergen County Prosecutor's Office (BCPO) examined defendant's vehicle on September 26, 2007. He noticed that the interior, passenger-side floor mat was missing. A small red stain, possibly blood, was located in the passenger-side rear section of the vehicle. The officers also found clothing and a bottle of window cleaner in the car.

Brazofsky testified that the car's trunk liner was missing, and he noticed two separate reddish brown stains in the trunk, which he suspected were blood. He noticed additional stains on the CD player in the trunk of the car, which he also suspected to be blood.

Detective Mark Bendul of the BCPO interviewed defendant and searched the apartment defendant shared with Stathis. Three suspected blood stains were identified in the bathroom. After the stains were photographed, they were swabbed with distilled water so that samples could be collected. Bendul testified that tests indicated that the blood samples taken from the car matched Stathis' blood.

On July 9, 2008, Trooper Kevin Reppenhagen of the New York State Police received a call to investigate a suspicious bag on the Southern State Parkway. Reppenhagen located a plaid bag on the side of the highway. He believed the contents of the bag were decaying and could contain body parts. The area was secured as a crime scene. The bag contained an entire human skeleton, situated in the fetal position and covered with maggots.

The Nassau County Medical Examiner's Office performed an autopsy of the body. The cause of death was determined to be blunt force trauma and breaking of the hyoid bone, a sign indicating strangulation. A forensic anthropologist indicated the body was female, white, between thirty to fifty years old, and approximately Stathis' height.

A forensic odontologist examined the teeth of the corpse, and Stathis' dentist confirmed the body was Stathis' corpse. The investigation revealed defendant previously lived in Nassau County, New York, directly adjacent to the Southern State Parkway. DNA samples taken from the remains were matched to DNA samples provided by Stathis' parents, and the forensics analysis determined the DNA taken from the car and apartment bathroom was that of a female and also matched the DNA of Stathis' parents.

On count one, the jury found defendant not guilty of murder, but guilty of the lesser included offense of aggravated

manslaughter. The jury found defendant guilty on counts two through six. The court sentenced defendant on count one, (aggravated manslaughter), to a thirty-year custodial term, and required defendant to serve eighty-five percent of that sentence before becoming eligible for parole, pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2.

In addition, on count two (disturbing human remains), the court imposed a concurrent ten-year term, with five years of parole ineligibility. On count three (forgery), the court sentenced defendant to a consecutive five-year term, with two-and-one-half years of parole ineligibility. Moreover, on count six (hindering), the court imposed a consecutive five-year term, with two-and-one-half years of parole ineligibility.

Defendant appealed from the judgment of conviction dated October 28, 2010. We affirmed defendant's convictions and the sentences imposed. State v. Francois, No. A-0757-10 (App. Div. Oct. 4, 2012). Defendant then filed a petition for certification with the Supreme Court. The Court denied the petition, State v. Francois, 216 N.J. 366 (2013).

On August 6, 2015, defendant filed a PCR petition in which he claimed he was denied the effective assistance of trial counsel. He claimed his attorney was deficient because counsel failed to: (1) file a motion to allow defendant to represent himself at trial;

(2) argue that the State failed to prove its case beyond a reasonable doubt; (3) object to inadmissible expert testimony; (4) object to the admission of certain "other crimes" evidence; (5) move for a severance of the charges against him; and (6) object to the testimony regarding a spare tire. In addition, defendant argued that the prosecutor's comments during summation were improper and so prejudicial that they denied him a fair trial.

The PCR judge assigned counsel to represent defendant and counsel submitted a brief on defendant's behalf. On May 31, 2016, the PCR judge heard oral argument, and on June 10, 2016, the judge filed a written opinion, finding that defendant had not presented a prima facie case of ineffective assistance of counsel and an evidentiary hearing was not required on the petition. The judge entered an order dated June 10, 2016, denying PCR. This appeal followed.

II.

On appeal, defendant argues he was denied the effective assistance of counsel because: (1) his trial attorney did not file and argue a motion for waiver of his right to counsel so that he could represent himself at trial; (2) trial counsel failed to argue in summation that the State had failed to prove he committed the charged offenses beyond a reasonable doubt, and appellate counsel erred by failing to raise that issue on appeal; (3) trial

counsel failed to object to Detective Bendul's testimony regarding the blood sample taken from his vehicle because Bendul was not qualified as an expert; and (4) trial counsel failed to object to certain remarks by the prosecutor in summation. In addition, defendant argues that the PCR court erred by denying his request for an evidentiary hearing.

A defendant is entitled to an evidentiary hearing on a PCR petition if the defendant presents a prima facie case in support of PCR, the court determines there are material issues of fact that cannot be resolved based on the existing record, and the court finds that an evidentiary hearing is required to resolve the claims presented. R. 3:22-10(b); see also State v. Porter, 216 N.J. 343, 354 (2013) (citing R. 3:22-10(b)).

The Sixth Amendment to the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution guarantee criminal defendants the right to the effective assistance of counsel. State v. O'Neil, 219 N.J. 598, 610 (2014) (citing Strickland v. Washington, 466 U.S. 668, 686 (1984); State v. Fritz, 105 N.J. 42, 58 (1987)). To succeed on a claim of ineffective assistance of counsel, the defendant must meet the two-part test established by Strickland, 466 U.S. at 686, and adopted by our Supreme Court in Fritz, 105 N.J. at 58.

Under Strickland, a defendant first must show that his or her attorney made errors "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. Counsel's performance is deficient if it "[falls] below an objective standard of reasonableness." Id. at 688.

A defendant also must show that counsel's "deficient performance prejudiced the defense." Id. at 687. The defendant must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome" of the proceeding. Ibid.

A. Motion for Self-Representation

Defendant argues his trial attorney was deficient because he did not file a motion to waive his right to counsel, after defendant said he no longer wanted the attorney to represent him at trial. Defendant contends the attorney should have urged the court to conduct a hearing so that the court could inform him of his right to self-representation, as explained in State v. DuBois, 189 N.J. 454 (2007).

On direct appeal, defendant argued that his right under the Sixth Amendment to the United States Constitution was violated

because the trial judge denied his request for self-representation. We rejected that claim, noting that defendant had not sought permission to represent himself until the close of testimony on the second day of trial. Francois, No. A-0757-10, slip op. at 18–19. We held that under the circumstances, the judge did not abuse his discretion in denying defendant's application. Id. at 23.

Here, the PCR court found that defendant's claim of ineffective assistance of counsel was barred by Rule 3:22-5 because the issue had been raised on direct appeal and we had determined that the judge did not abuse his discretion by denying defendant's request to proceed pro se. Even if defendant's claim was not barred by Rule 3:22-5, defendant failed to show that counsel was deficient in failing to file a motion to allow defendant to represent himself at trial.

As noted, defendant's apparent dissatisfaction with his attorney first arose while the trial was underway. Indeed, on direct appeal, defendant argued that his dissatisfaction with his attorney was "unknown and unknowable" prior to trial. Francois, No. A-0757-10, slip op. at 23. When the trial judge told defendant he could not speak in front of the jury and he had to communicate through his attorney, he stated, "If that's the case, why don't you let me represent myself then?" Id. at 19.

Defendant made six further requests to represent himself, and the judge repeatedly instructed defendant on the rules of courtroom behavior. Ibid. He told defendant that his attorney was "extremely capable," but defendant disagreed and again requested permission to represent himself. Ibid. The trial judge found the application was untimely. Ibid.

Thus, the record shows that at trial defendant made a motion for self-representation, and he has not shown that the application would have been granted if it had been made by his attorney. In addition, defendant has not shown that he was prejudiced by counsel's failure to make the motion. The result would have been the same. The motion was untimely, and as we held in defendant's direct appeal, the trial judge did not abuse his discretion by denying it.

B. Trial Counsel's Summation

Next, defendant argues his trial attorney should have argued in summation that the State failed to prove beyond a reasonable doubt that he committed the charged offenses. The PCR court correctly found that this claim was barred by Rule 3:22-4 because it could have been, but was not, raised on direct appeal. However, the PCR court also addressed the claim on the merits and found that defendant had not met either prong of the Strickland test for ineffective assistance of counsel.

The PCR court noted that in summation, defendant's attorney had criticized the State's case. Moreover, the trial judge had instructed the jury that the State had the burden of proving all elements of the charged offenses beyond a reasonable doubt. The PCR court found that defendant had not shown his attorney was deficient in his summation, or that he had been prejudiced by counsel's summation. The record supports the PCR court's determination that defendant had not raised a prima facie claim of ineffective assistance of counsel with regard to defense counsel's summation. For the same reasons, we reject defendant's claim that his appellate counsel was deficient for failing to raise the issue on direct appeal. Appellate counsel had no obligation to raise this meritless claim, and the result of the appeal would not have been different if the issue had been raised.

C. Detective Bendul's Testimony

Defendant further argues his trial attorney was deficient because he failed to object to Detective Bendul's testimony regarding the samples taken from stains in his vehicle, which tested positive for blood and were determined to be Stathis' blood. Defendant contends Bendul's testimony was expert testimony and his attorney should have objected because Bendul had not been qualified as an expert.

The PCR court correctly found this claim was procedurally barred by Rule 3:22-4 because it could have been, but was not, raised on direct appeal. The court nevertheless addressed the merits of this claim, finding that counsel was not deficient in failing to object to Bendul's testimony because he was not testifying as an expert.

The detective merely provided the jury with a summary of the results of the tests performed on the stains. The court noted that at trial, the State had also presented testimony from a forensic scientist at the New Jersey State Police lab, who confirmed that Stathis was the source of the bloodstains found in defendant's car.

Thus, the PCR court correctly determined that defense counsel was not deficient in failing to object to Bendul's testimony regarding the results of the tests on the blood stains. Even if counsel erred by failing to object, defendant failed to show he was prejudiced by the error. Defendant failed to show the trial court would have barred Bendul from testifying about the facts if counsel had objected. Moreover, the State's forensic scientist testified that Stathis was the source of the bloodstains found in the car.

D. The Prosecutor's Summation

Defendant also argues his trial attorney was deficient because he failed to object to the assistant prosecutor's statement in summation that the murder did not take place in the victim's bathroom or apartment. Defendant notes that in the opening statement, the prosecutor referred to red stains found in the bathroom, which were presumed to be blood. Defendant argues that the crime was not committed in the bathroom, and the blood stains found there were irrelevant.

The PCR court correctly found that this claim was barred by Rule 3:22-4 because it could have been, but was not, raised on direct appeal. Nevertheless, the court addressed the issue and concluded that defendant had not shown he was denied the effective assistance of counsel because his attorney failed to object to the prosecutor's remarks.

In its decision, the PCR court noted that in his closing, the prosecutor had argued that the blood evidence in the bathroom could support a finding that Stathis had been killed there, but it was more likely that she was killed in defendant's car. The PCR court pointed out that the State did not have to prove where Stathis was killed. The State only had to prove that defendant murdered Stathis. The court found that the prosecutor's remarks

were not improper and defense counsel was not deficient in failing to object.

We agree defendant's arguments on this point are without sufficient merit to warrant further discussion. R. 2:11-3(e)(2).

E. Evidentiary Hearing

In addition, defendant argues that the PCR court erred by failing to conduct an evidentiary hearing on his petition. However, because defendant failed to raise a prima facie case for relief, and the existing record was sufficient to resolve defendant's claims, the court correctly found he was not entitled to an evidentiary hearing. Porter, 216 N.J. at 354 (citing R. 3:22-10(b)).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION