# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0496-17T1

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

G.N.W.,

      Defendant-Appellant.

_____

Argued October 29, 2019 – Decided January 28, 2020

Before Judges Messano, Ostrer and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 14-07-1248.

Cody Tyler Mason, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Cody Tyler Mason, of counsel and on the brief).

Mary Rebecca Juliano, Assistant Prosecutor, argued the cause for respondent (Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney; Mary Rebecca Juliano, of counsel and on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

This case involves the sexual predation of children while in the sanctuary of their own bedrooms, highlighting the dangers children face today when they use the internet and internet-connected gaming devices. Defendant, G.N.W., appeals from his trial convictions for first-degree aggravated sexual assault and related charges of manufacturing and distributing child pornography. Defendant insisted upon representing himself at trial, took the witness stand, and freely admitted that he used the video chat and photo messaging features of his Xbox videogame console to encourage boys between the ages of ten and fifteen to send him sexually explicit videos. Defendant also admitted, among other things, that he sent the children videos of himself masturbating. The State's trial proofs, which included electronic evidence seized from defendant's home and the live testimony of four[1] underage victims, established that defendant induced the children to perform and video record sexual acts, including anal penetration.

Defendant has been steadfast in his contentions that pedophiles are a persecuted minority and that the New Jersey Code of Criminal Justice

---

[1]  A fifth child chose not to testify, and the trial court dismissed charges involving that child at the close of the State's case.

2

wrongfully makes this conduct a crime. These tenets are the foundation of his defense strategy. He also argued that his conduct was not unlawful because the children consented to every request he made. The jury rejected this defense and convicted defendant of twenty-one crimes involving the four underage victims. He was sentenced to an aggregate term of forty-six years of imprisonment during which he must serve thirty-eight years before becoming eligible for parole.

On appeal defendant raises a number of contentions challenging both his trial convictions and sentence. After reviewing the record in light of the applicable legal standards, we reject all but one of defendant's arguments on appeal. Specifically, we cannot determine whether the seven-year delay between defendant's arrest in 2009 and his trial in 2016 violated his constitutional right to a speedy trial.

It appears that much of the delay was attributed to (1) the high volume of defense motions; (2) the nature of an investigation involving forensic analysis of digital evidence used to identify out-of-state victims; and (3) additional charges being lodged as a result of new information provided by child witnesses who had been reluctant initially to reveal certain sexual acts. However, as the State acknowledges, the trial court did not make specific findings with respect to the four factors set forth in Barker v. Wingo. 407 U.S. 514 (1972). It

3

therefore is necessary to remand the case to the Law Division to undertake the fact-sensitive analysis required by Barker.

I.

This case, which four different Law Division judges presided over, has a long and tortuous procedural history. We summarize the most significant events to provide context for defendant's speedy trial claim.

In October 2009, defendant was arrested the day after the Monmouth County Prosecutor's Office executed a search warrant and seized electronic devices and storage media from defendant's home. The ensuing forensic examination revealed the Xbox usernames of children with whom defendant communicated and shared pornographic photographs and videos.

On January 7, 2011, a Monmouth County grand jury charged defendant in a nineteen-count indictment.

On February 6, 2012, defendant filed motions to dismiss the indictment and to suppress evidence seized pursuant to the search warrant. He also moved for a bill of particulars and requested a Michaels[2] taint hearing. On January 9,

---

[2] State v. Michaels, 136 N.J. 299 (1994). The court at a Michaels hearing determines whether police used improper interview techniques with alleged child-sex-abuse victims, and whether those techniques "so infected the ability of the children to recall the alleged abusive events that their pretrial statements

A-0496-17T1

2013, defendant's attorney withdrew the motion for a bill of particulars, and the first judge assigned to the case denied defendant's motion to dismiss the indictment. The judge denied the Michaels motion without an evidentiary hearing on October 29, 2013, and the motion to suppress was denied on December 13, 2013.

On February 3, 2014, defendant appeared at a plea cutoff hearing pursuant to R. 3:9-3(g). At the hearing he acknowledged the maximum sentence that could be imposed for each count of the nineteen-count indictment. A trial date was scheduled for May 6, 2014.

At some point in the course of the preparation for trial, the State became aware that defendant encouraged two of the victims to penetrate themselves anally, conduct constituting first-degree crimes that the grand jury had not charged in the initial indictment. Defendant did not agree to allow the State to proceed with these additional charges by accusation. Accordingly, the State scheduled a grand jury hearing for June 20, 2014.

On July 16, 2014, a Monmouth County grand jury returned a superseding indictment charging defendant with twenty-seven counts. The superseding

---

and in-court testimony based on that recollection are unreliable and should not be admitted into evidence." Id. at 315–16. We note that defendant does not appeal from the denial of his Michaels motion.

indictment charged five counts of third-degree child endangerment, N.J.S.A. 2C:24-4(a) (counts one, nine, sixteen, twenty-one, and twenty-two); four counts of second-degree manufacturing child pornography, N.J.S.A. 2C:24-4(b)(4) (counts two, ten, seventeen, and twenty-three); four counts of second-degree causing a child to engage in child pornography, N.J.S.A. 2C:24-4(b)(3) (counts three, eleven, eighteen, and twenty-four); four counts of third-degree distribution of obscene material to a person under eighteen, N.J.S.A. 2C:34-3(b)(1) and (2) (counts four, twelve, nineteen, and twenty-five); three counts of second-degree sexual assault, N.J.S.A. 2C:14-2(b) (counts five, thirteen, and twenty); two counts of fourth-degree criminal sexual contact, N.J.S.A. 2C:14-3(b) (counts six and fourteen); two counts of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a) (counts seven and fifteen); two counts of second-degree sexual assault, N.J.S.A. 2C:14-2(c)(4) (counts eight and twenty-six); and one count of fourth-degree possession of child pornography, N.J.S.A. 2C:24-4(b)(5)(b) (count twenty-seven).

On August 18, 2014, defendant filed a motion to dismiss the superseding indictment. A second judge heard and denied that motion on October 10, 2014. Two weeks later, a third judge assigned to the case was preparing to decide another motion to suppress when the judge received a pro se submission from

6

defendant seeking to represent himself at trial. This submission led to the postponement of the re-scheduled trial date of January 5, 2015. Defendant later entered a formal request to proceed pro se and underwent a competency evaluation on February 24, 2015. The third judge found defendant to be competent on September 24, 2015. On October 20, 2015, the court found that defendant knowingly and voluntarily waived his right to counsel, whereupon the court granted defendant's application to represent himself.

The case was reassigned to a fourth judge, who on March 9, 2016, denied defendant's motions to dismiss the superseding indictment for vagueness and violations of the First Amendment; to dismiss for a violation of speedy trial; to suppress evidence; and to recuse both the third and fourth judges who had heard aspects of the case.

On March 10, 2016, the trial court held a new plea cutoff hearing for the superseding indictment at which time defendant was apprised that if convicted on all counts, he faced a maximum sentence of 239.5 years imprisonment with a 59.5-year period of parole ineligibility. A trial date was set for October 12, 2016. In the interim, defendant filed motions on June 20, August 5, September 8, and September 27, 2016.

A-0496-17T1

Trial commenced on October 20, 2016. At the close of the State's case, defendant moved to dismiss several counts, in part because one of the child witnesses did not testify. The trial judge granted that motion and entered judgments of acquittal on those counts.

On November 18, 2016, the jury convicted defendant of the remaining twenty-one counts. Defendant moved for a mistrial, which the trial court denied on April 28, 2017.

The sentencing hearing was held on April 28, 2017. After appropriate mergers, the court imposed an aggregate forty-six-year sentence with a thirty-eight-year term of parole ineligibility pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. The court also imposed multiple terms of Parole Supervision for Life (PSL), Megan's Law restrictions, and fees, penalties, and assessments totaling $33,080.

## II.

We next summarize the facts elicited at trial. Law enforcement authorities were alerted that defendant had posted a YouTube video in which he professed to be attracted to young boys and advocated for pedophilia. Defendant, who was nineteen years old at the time, admitted to detectives during a noncustodial interview that he found ten-year old boys "just so hot." Defendant discussed his

A-0496-17T1

Xbox video game console and its attached camera and microphone, which he used to communicate with "many people, including children" under his username, TEENTECH.

Five months later, S.S. went into the bedroom of her twelve-year-old son, Z.M., and saw that the user profile for TEENTECH was displayed on the computer screen with a personalized caption that read, "[I]'m 20 years old and I like little boys." S.S. sent a message to TEENTECH telling him to stop communicating with her son. Defendant responded by sending a message to Z.M., stating, "I don't care what your mom says."

When S.S. learned of defendant's defiant response, she filed a report with the National Center for Missing and Exploited Children (NCMEC), and this information was, in turn, provided to the Monmouth County Prosecutor's Office detective who had previously interviewed defendant about his YouTube video. The following month, S.S. discovered that Z.M. was texting with defendant. NCMEC placed S.S. in contact with the Monmouth County Prosecutors Office detective. She provided the detective with Z.M.'s cell phone and consented to a forensic search of the phone.

That examination revealed inappropriate text messages between defendant and Z.M. The Monmouth County Prosecutors Office obtained a warrant to

search defendant's home, which was executed on October 21, 2009. Police seized numerous electronic devices and media. A preliminary search of one of defendant's hard drives revealed what appeared to be child pornography. Defendant was arrested the next day.

A more intensive forensic examination of the seized devices/media, conducted pursuant to a separate warrant, yielded thousands of images of child pornography. The examination of defendant's Xbox also revealed the usernames of the four victims who testified in this prosecution, along with corresponding videos, photographs, and messages. Further investigation provided the actual identities and locations of these victims.

The four child victims were: J.S., who was between twelve and thirteen years old during the period of communication with defendant; C.G., who was between ten and eleven years old during the period of communication with defendant; A.J., who was fifteen years old during the period of communication with defendant; and Z.M., who was between eleven and twelve years old during the period of communication with defendant.

The State at trial presented video that defendant had recorded of himself as he was viewing messages and images provided by the victims. This recording showed that defendant highlighted messages from their accounts in his inbox,

 A-0496-17T1

opened the messages, viewed illicit webcam photographs/videos of the children, verbally commented in a lewd manner on the pictures, and sent appreciative messages back to the children, instructing them to keep quiet.

The State also presented video evidence seized from defendant's hard drive that recorded some of defendant's live chats with the children. During one of these chats, defendant pleaded with J.S. to disrobe, urging the child, "please, strip for me. Let me just watch. Come on get out. Get out of those blankets." Defendant threatened J.S. that if he did not do as he asked, defendant would "turn off [his] console right now."

The four victims testified at trial and each provided a similar account of their relationship with defendant. J.S. testified that the recorded video chat in which defendant urged J.S. to disrobe and threatened to disable his Xbox console was "a common occurrence" and "something that was very, very regular over the course of the two years." J.S. testified that defendant was "very flirtatious and very forward" when they first met electronically and "almost immediately" started trying to get J.S. to disrobe. During one of their video conversations, defendant convinced J.S. to penetrate his rectum with his finger, and at a later time, convinced defendant to penetrate his rectum with a marker.

A-0496-17T1

C.G. testified that during their video chats, defendant was "naked most of the time. He would have no shirt on. No pants on. . . . [And] he would touch himself." At defendant's urging, C.G. sent defendant photographs depicting C.G. naked and touching himself sexually.

A.J. testified that defendant told him he "was hot" and asked the child to touch his own penis and "make it hard and stuff like that." At defendant's urging, A.J. sent defendant photographs depicting A.J. holding his penis and penetrating his anus.[3] Defendant also sent child pornography to A.J. through a photo sharing application on the Xbox.

Z.M. testified that defendant would urge him to take and send photographs of Z.M. masturbating using both his hand and the Xbox controller that vibrated. Also, at defendant's urging, Z.M. tried "sticking a finger in [his] anus."

### III.

Defendant raises the following contentions on appeal:

POINT I

REVERSAL IS REQUIRED BECAUSE THE TRIAL COURT DID NOT ENSURE DEFENDANT'S

---

[3] According to the law, "sexual penetration" means "vaginal intercourse, cunnilingus, fellatio or anal intercourse between persons or insertion of the hand, finger or object into the anus or vagina either by the actor or upon the actor's instruction. The depth of insertion shall not be relevant as to the question of commission of the crime." N.J.S.A. 2C:14-1.

12

WAIVER OF COUNSEL WAS KNOWING AND INTELLIGENT, AND, IF THE WAIVER WAS VALID, BECAUSE IT INTERFERED WITH DEFENDANT'S RIGHT TO REPRESENT HIMSELF BY PREVENTING HIM FROM ARGUING MOTIONS AND TESTIFYING OTHER THAN BY BEING QUESTIONED BY STANDBY COUNSEL.

A. THE WAIVER OF COUNSEL WAS NOT VALID BECAUSE THE COURT DID NOT FIRST ENSURE THAT DEFENDANT UNDERSTOOD THE PENAL CONSEQUENCES, THE NATURE OF THE OFFENSES, THE AVAILABLE DEFENSES, AND THE RISKS OF PROCEEDING PRO SE.

B. THE TRIAL COURT VIOLATED DEFENDANT'S RIGHT TO SELF-REPRESENTATION WHEN IT DENIED A MOTION TO SUPPRESS EVIDENCE BEFORE GRANTING HIS MOTION TO PROCEED PRO SE[] AND ORDERED THAT HIS TESTIMONY BE ELICITED THROUGH QUESTIONING BY STANDBY COUNSEL.

POINT II

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN NOT SEVERING THE COUNTS RELATING TO THE DIFFERENT CHILDREN, IN NOT TELLING THE JURY TO DISREGARD EVIDENCE OF DISMISSED CHARGES, AND IN ALLOWING THE STATE TO IMPROPERLY BOLSTER ITS CASE.

13

A. THE TRIAL COURT COMMITTED PLAIN ERROR BY NOT SEVERING THE COUNTS CONCERNING UNRELATED CHILDREN AND EVENTS.

B. THE TRIAL COURT COMMITTED PLAIN ERROR IN NOT CHARGING THE JURY TO DISREGARD THE OTHER-CRIME EVIDENCE REGARDING THE DISMISSED COUNTS.

C. REVERSAL IS REQUIRED BECAUSE THE STATE BOLSTERED ITS CASE AND DISPARAGED DEFENDANT'S CREDIBILITY WITH INADMISSIBLE TESTIMONY.

D. THE ERRORS AT TRIAL INDIVIDUALLY AND CUMULATIVELY REQUIRE REVERSAL OF DEFENDANT'S CONVICTIONS.

POINT III

DEFENDANT'S RIGHT TO A SPEEDY TRIAL WAS VIOLATED BY THE NEARLY SEVEN-YEAR DELAY BETWEEN HIS ARREST AND TRIAL SUCH THAT A REMAND FOR DISMISSAL OF THE INDICTMENT IS REQUIRED.

POINT IV

RESENTENCING IS REQUIRED BECAUSE THE COURT ERRED IN FINDING AGGRAVATING FACTOR TWO AND NOT ADDRESSING

MITIGATING FACTOR FOUR, DID NOT MAKE APPROPRIATE FINDINGS IN IMPOSING FINES, AND IMPOSED ILLEGAL CONDITIONS ON CERTAIN COUNTS.

> A. THE TRIAL COURT ERRED IN FINDING AGGRAVATING FACTOR TWO BASED ON DOUBLE-COUNTING AND WITHOUT CONSIDERING THE NATURE OF THE OFFENSES[] AND IN NOT ADDRESSING OR FINDING MITIGATING FACTOR FOUR DESPITE AMPLE EVIDENCE OF DEFENDANT'S CHILDHOOD TRAUMA AND MENTAL HEALTH ISSUES.

> B. THE TRIAL COURT ERRED IN IMPOSING $16,500 IN FEES UNDER N.J.S.A. 2C:14-10 WITHOUT ADDRESSING THE FACTS OF THE CASE AND ISSUES AFFECTING DEFENDANT'S ABILITY TO PAY.

> C. THE TRIAL COURT ERRED IN IMPOSING PAROLE SUPERVISION FOR LIFE ON COUNTS TWO, TEN, SEVENTEEN, AND TWENTY-THREE, AND MEGAN'S LAW ON COUNT TWENTY-SEVEN.

Defendant also raises several contentions in a pro se brief:[4]

> POINT I

---

[4] The brief does not follow a traditional format and these are the closest approximations of point headings.

A-0496-17T1

INEFFECTIVE ASSISTANCE OF COUNSEL FOR NO RECORD OF COUNSEL FILING MOTION FOR DISMISSAL OF INDICTMENT FOR DENIAL OF SPEEDY TRIAL BASED ON ANY POTENTIAL ISSUES TO BE TESTED BY COURT IN THE TIME PERIOD OF REPRESENTING DEFENDANT AFTER ONE YEAR AND UP TO SIX YEARS AFTER DEFENDANTS ARREST AND CONTINUES CONFINEMENT.

POINT II

ERROR DENYING MOTION AND/OR COURT FAILURE TO FILE MOTION DE NOVO FOR DISMISSAL OF INDICTMENT FOR DENIAL OF SPEEDY TRIAL RESULTING IN IRREVERSIBLE ASSUMED PREJUDICE AFTER AT LEAST ONE OF THE FALLOWING [SIC]: ABOUT SIX AND A HALF YEARS SINCE ACCUSATION OF CASE OR INCARCERATION PROSPECTIVELY SEVEN YEARS, FOURTEEN AND A HALF MONTHS TO INDICT, THE REAPPOINTMENT OF COUNSEL FROM PRIVATE TO PUBLIC AFTER A YEAR IN TO CASE, HAVING TO HAVE NEW COUNSEL REQUEST DELAY NEARLY TWO YEARS IN TO CASE TO REVIEW RECORD, PROSECUTION TAKING MONTHS TO FILE RESPONSE BRIEF, PROSECUTION AFTER 4.5 YEARS POSSESSING EVIDENCE OR LOCATION OF EVIDENCE WANTED TO ADD.

POINT III

ERROR TRIAL COURT INTERUPTING [SIC] PRO SE DEFENDANTS ORAL ARGUMENT DURING MOTION FOR DISMISSAL OF INDICTMENT ON GROUNDS OF DENIAL OF SPEEDY TRIAL PROVENTING [SIC] DEFENDANT FROM RAISING

16

REPRESENIONS [SIC] OF EVENTS WHICH: CONSTRUCTIVELY CONSTITUTE, OR ITSELF CONSTITUTE: CITING PREJUDICE, OR CITE OPPOSING PARTIES DELAYS.

POINT IV

ERROR TRIAL COURT DENYING MOTION FOR DISMISSAL OF INDICTMENT ON GROUNDS SUGGESTING THE COURT DELAYED TRIAL RATHER THEN [SIC] STATE-PROSECUTION OR "THE COURT WAS UNDERSTAFFED". [SIC] HOWEVER, DISCOUNTING ANY COURT DELAY STATE-PROSECUTION HAD EITHER OR BOTH DELAYED CASE OR COMMITED [SIC] ACTIONS CONTRIBUTING TO THE DEFENSE DELAY OF A YEAR WITHOUTH [SIC] STATE PROACTIVELY NEGATING POSSIBLE PREJUDICES OR DEFENDANT HAD SUFFERED PREJUDICE.

POINT V

ERROR TRIAL COURT DENYING MOTION FOR DISMISSAL OF INDICTMENT ON GROUNDS OF COURT SUGGESTING COURT DELAYED TRIAL COURT, RATHER THEN [SIC] STATE-PROSECUTION; OR "THE COURT WAS UNDERSTAFFED", [SIC] HOWEVER, THE COURTS JUSTIFICATION WAS BASED ON AXIOM OF FALSEHOOD OR WAS ITSELF A FALSEHOOD. PERSUINT [SIC] TO U.S. CONST. AMEND. 6 SPEEDY TRIAL CLAUSE.

POINT VI

ERROR DISTRICT TRIAL COURT EITHER NOT FILING INDEPENDENT MOTION DE NOVO, OR DENYING DEFENSE MOTION: FOR DISMISSAL

A-0496-17T1

OF INDICTMENT ARGUING DENIAL OF SPEEDY TRIAL, BASED ON OTHER SOURCE'S CONRABUTION [SIC] TO DELAY; DESPITE AT LEAST ONE OF THE FALLOWING [SIC] STATE-PROSECUTION DELAY OF AT LEAST ONE YEAR, AFTER STATE-PROSECTION [SIC] HAD CONTRIBUTED [SIC] TO AT LEAST YEAR OF DELAY, OR SHERE [SIC] EXTENT OF DELAY.

POINT VII

ERROR DENYING MOTION AND/OR COURT FAILURE TO FILE MOTION DE NOVO FOR DISMISSAL OF INDICTMENT FOR DENIAL OF SPEEDY TRIAL RESULTING IN IRREVERSIBLE ASSUMED PREJUDICE IN AT LEAST ONE OF THE FALLOWING [SIC] CIRCUMSTANCES: CHILD SEX CASE WHERE CASE OR OTHER THIRD PARTY JUDGEMENT [SIC], INVESTIGATION OR INQUIRY INSINUATED TO HAVE CAUSED SEVERE EMOTIONAL INJURY TO CHILDREN IRRESPECTIVE DEFENDANTS CASE; EVIDENCE EXISTED.

## IV.

We first address defendant's contention that his right to a speedy trial was violated due to the seven years that elapsed between his arrest and trial. By any objective measure, this is a substantial period of time, one that requires careful scrutiny.

In State v. Cahill, the New Jersey Supreme Court reaffirmed "that the four-factor balancing analysis of [Barker] remains the governing standard to

evaluate claims of a denial of the federal and state constitutional right to a speedy trial." 213 N.J. 253, 258 (2013). Those four factors are: "length of the delay, reason for the delay, assertion of the right by a defendant, and prejudice to the defendant." Id. at 264 (citing Barker, 407 U.S. at 530). "None of the Barker factors is determinative, and the absence of one or some of the factors is not conclusive of the ultimate determination of whether the right has been violated." Id. at 267 (citing Barker, 407 U.S. at 533). "[T]he factors are interrelated, and each must be considered in light of the relevant circumstances of each particular case." State v. Tsetsekas, 411 N.J. Super. 1, 10 (App. Div. 2009) (citing Barker, 407 U.S. at 533).

When delay exceeds one year, the court presumptively should analyze all of the Barker factors. Cahill, 213 N.J. at 265–66. We have previously cautioned, however, against deciding "how long is too long . . . 'by sole reference to the lapse of a specified amount of time.'" State v. Detrick, 192 N.J. Super. 424, 426 (App. Div. 1983) (quoting State v. Smith, 131 N.J. Super. 354, 360 (App. Div. 1974)). Legitimate delays, "however great," will not violate the defendant's right to a speedy trial if it does not specifically prejudice defendant's defense. Doggett v. United States, 505 US. 647, 656 (1992).

It bears emphasis that longer delays may "be tolerated for serious offenses or complex prosecutions." Cahill, 213 N.J. at 266. Intuitively, defense-caused delay does not support a speedy trial violation and such delays are subtracted from the total calculus. United States v. Claxton, 766 F.3d 280, 294 (3d Cir. 2014) (citing United States v. Battis, 589 F.3d 673, 680 (3d Cir. 2009)); see also State v. Long, 119 N.J. 439, 470 (1990) (holding that "[a]ny delay that defendant caused or requested would not weigh in favor of finding a speedy trial violation" (quoting State v. Gallegan, 117 N.J. 345, 355 (1989))). Of course, purposeful delay tactics weigh heavily against the State. Barker, 407 U.S. at 531.

"The only remedy" for a violation of a defendant's right to a speedy trial "is dismissal of the charge." Cahill, 213 N.J. at 276. On appeal, "we reverse only if the court's determination is clearly erroneous." Tsetsekas, 411 N.J. Super. at 10 (citing State v. Merlino, 153 N.J. Super. 12, 17 (App. Div. 1977)).

In this instance, the reasons for the seven-year period between arrest and are clearly attributable to both sides. In part because speedy trial issues were raised at different times, we do not have the benefit of a comprehensive Law Division opinion that divides the overall delay into discrete periods and then

explains and evaluates the reasons for delay in each of these time periods.[5]

Importantly, and as the State candidly acknowledges in its appellate brief, the

trial court did not make specific findings as to the Barker factors.

There are many circumstances to consider, including but not limited to (1)

the seriousness of the crimes; (2) the complexity and logistical challenges of an

investigation that required forensic analysis of digital evidence used to identify

and locate out-of-state child witnesses; (3) new information provided by two

child victims who had been reluctant initially to reveal that they had been urged

to engage in anal penetration; (4) the number of judges assigned to preside over

various events; (5) numerous pretrial motions defendant filed at all stages of the

case;[6] and (6) defendant's unorthodox defense strategy, which may be relevant

in determining whether that defense was prejudiced by delay.

---

[5] Compare State v. May, 362 N.J. Super. 572, 596 (App. Div. 2003), where a single trial judge applied the Barker factors, divided the time into discrete periods of delay, and attributed each period to the State, defendant, or court system.

[6] Under the third Barker factor—the extent to which a defendant asserts his or her speedy trial right—a defendant's filing of multiple "indisputably frivolous" motions weighs against a finding of a violation. United States v. Loud Hawk, 474 U.S. 302, 314 (1986). As noted, defendant moved to proceed pro se because he wanted to file more motions and did so at a prolific rate after he was accorded the right of self-representation. We are not in the best position to determine which if any of the denied motions were frivolous, and we leave that

A-0496-17T1

It is impracticable for us to review this record and exercise original jurisdiction pursuant to R. 2:10-5 to decide the ultimate question whether defendant's right to a speedy trial was violated. See Tomaino v. Burman, 364 N.J. Super. 234–35 (App. Div. 2003) (opining that appellate courts should exercise original jurisdiction "only with great frugality"). Moreover, it is conceivable, if not likely, that the current record is not adequate to permit a fulsome review of the Barker factors. The circumstances explaining certain periods of delay, for example, may be outside the current record, in which event further factfinding may be necessary. Exercise of original jurisdiction is discouraged if factfinding is involved. State v. Micelli, 215 N.J. 284, 293 (2013) (quoting State v. Santos, 210 N.J. 129, 142 (2012)).

We therefore believe review of the Barker factors is best delegated to the trial court in the first instance. A trial court is better suited than we are to undertake "the difficult task of balancing all the relevant factors relating to the respective interests of the State and the defendant[]," and to provide "subjective reactions to the particular circumstances [to] arrive[] at a just conclusion." Merlino, 153 N.J. Super. at 17.

---

determination to the sound judgment of the trial court on remand. We also note that defendant was informed on multiple occasions that filing voluminous motions would lead to further trial delays.

Accordingly, we remand the matter to the Law Division to (1) catalog and compartmentalize all of the discrete periods of delay, (2) determine and evaluate the specific reasons for delay, and, (3) as to delay attributed to the State, determine whether the delay was the product of the case's complexity or other legitimate justification, or else was the product of purposeful delay tactics or mere inaction. The Law Division should apply the Barker factors in light of those findings.

As noted, this analytical process "necessarily involves subjective reaction to the balancing of circumstances." State v. Szima, 70 N.J. 196, 201 (1976). We leave it to the sound discretion of the trial court regarding the conduct of those proceedings, including whether testimony is necessary. Should the court conclude defendant's speedy trial rights were violated, it shall vacate defendant's judgment of conviction and dismiss the superseding indictment.

V.

Defendant claims that he did not knowingly and intelligently waive his right to trial counsel. Contrary to defendant's assertions on appeal, the record clearly shows that he was apprised of the risks of proceeding pro se and that he knowingly and voluntarily, indeed gladly, accepted the challenges of self-

representation, in large part because he wanted to advocate for himself publicly and make a statement in support of pedophilia.

Defendants have both the right to counsel and the right to represent themselves. State v. Dubois, 189 N.J. 454, 465 (2007). To exercise the right to proceed pro se, defendants must knowingly and voluntarily waive their right to counsel. State v. Reddish, 181 N.J. 553, 587 (2004). Before allowing a defendant to proceed pro se, a court must conduct an on-the-record inquiry of the defendant. See In re DiLeo, 216 N.J. 449, 479 (2014) (concluding it was improper for the trial court judge to deem the right to counsel waived without a "searching inquiry" by the court). The defendant is to "be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" Faretta v. California, 422 U.S. 806, 835 (1975) (quoting Adams v. United States ex. rel. McCann, 317 U.S. 269, 279 (1942)).

The New Jersey Supreme Court specifically requires that defendants wishing to proceed pro se be made aware of:

> (1) the nature of the charges, statutory defenses, and possible range of punishment; (2) the technical problems associated with self-representation and the risks if the defense is unsuccessful; (3) the necessity that defendant comply with the rules of criminal procedure and the rules of evidence; (4) the fact that the

24

lack of knowledge of the law may impair defendant's ability to defend himself or herself; (5) the impact that the dual role of counsel and defendant may have; (6) the reality that it would be unwise not to accept the assistance of counsel; (7) the need for an open-ended discussion so that the defendant may express an understanding in his or her own words; (8) the fact that, if defendant proceeds pro se, he or she will be unable to assert an ineffective assistance of counsel claim; and (9) the ramifications that self-representation will have on the right to remain silent and the privilege against self-incrimination.

[Dubois, 189 N.J. at 468–69.]

In this instance, the court first responded to defendant's request to proceed pro se by ordering a competency examination by a forensic psychologist. The psychologist examined defendant and determined that he fully grasped his legal situation. Accordingly, the court found defendant competent to stand trial.

The court also determined that defendant understood the crimes he was charged with, the elements of those offenses, and the sentence that could be imposed were he to be convicted. The judge also ensured that defendant knew what he was giving up and what self-representation entailed. Although the judge expressed skepticism concerning defendant's proposed defenses, defendant was steadfast in his assertion that he could present the "best defense" for himself because he was "well acquainted with the law . . . and . . . kn[e]w the particulars of the case better than anyone."

On October 20, 2015, defendant was again apprised of the risks of proceeding pro se, to which he replied that he was "better equipped than many people" to handle his defense because he was "devoted to do this case. [He was] . . . well aware of all the circumstances and everything surrounding the case even beyond what's in discovery." The judge then engaged in a thorough and probing colloquy during which defendant expressed that he fully understood the difficulties with proceeding pro se. Although the judge continued to question the wisdom of defendant's election, he found that defendant's request was "clear and unequivocal in spite of the pitfalls . . . [and] difficulties . . . he has indicated he is aware of." The judge thereupon found defendant's waiver to be made knowingly and voluntarily.

After reviewing the trial court's thorough and probing colloquies with defendant in the course of two hearings, we conclude that defendant was properly advised by the court in accordance with Faretta and Reddish, and the trial court did not abuse its discretion in finding that defendant knowingly and voluntarily waived his right to be represented by counsel at trial. See Dubois, 189 N.J. at 475 (applying abuse-of-discretion standard of review to trial court finding of knowing and intelligent waiver of right to counsel).

A-0496-17T1

Defendant next contends that despite having granted defendant's request to represent himself at trial, the trial court did not respect defendant's constitutional right of self-representation and instead impeded defendant from pursuing his chosen trial strategy or allowed standby counsel to do so. Specifically, defendant asserts that the trial court (1) refused to permit defendant to control the litigation of a motion to suppress evidence seized pursuant to a search warrant and (2) required defendant to answer questions posed by standby counsel rather than permit defendant to testify in narrative fashion, thereby allowing standby counsel to screen out questions that defendant wanted posed to him on the witness stand.

We begin our analysis of these contentions by acknowledging the principles of constitutional law that we must adhere to and safeguard. Once a defendant has waived the right to counsel and has been granted the right of self-representation, he or she must be afforded the ability "to control the organization and content of his [or her] own defense, to make motions, to argue points of law, . . . to question witnesses, and to address the court and the jury at appropriate points in the trial." Dubois, 189 N.J. at 466 (quoting McKaskle v. Wiggins, 465 U.S. 168, 174 (1984)). It does not matter that the trial court is justifiably

skeptical of the defendant's trial strategy and earnestly wants to protect a defendant from the adverse consequences of ill-conceived pro se arguments. As our Supreme Court noted in State v. King, "[t]he trial court was concerned understandably about defendant's ability to present a sound defense. Such concern, no matter how well-intentioned, cannot override defendant's exercise of his right to decide to represent himself." 210 N.J. 2, 21 (2012).

In determining whether a defendant's right to conduct his own defense has been respected, "the primary focus must be on whether the defendant had a fair chance to present his case in his own way." McKaskle, 465 U.S. at 177. Although the appointment of standby counsel is permitted, the defendant must maintain "actual control over the case he chooses to present to the jury." Id. at 178. Standby counsel's participation must not "destroy the jury's perception that the defendant is representing himself." Ibid. Furthermore, and of particular importance in the circumstances of the case before us, the trial court must not allow standby counsel to "substantially interfere[ ] with the defendant's trial strategy." Reddish, 181 N.J. at 597 (citing McKaskle, 465 U.S. at 178). When such interference occurs, the constitutional right of self-representation is violated and reversal and a new trial is required. See State v. Gallagher, 274 N.J. Super. 285, 289 (App. Div. 1994).

28

## A.

Defendant contends the trial court erred by not respecting his right to control the litigation of a defense motion to suppress evidence obtained from a search warrant. The validity of the warrant and the ensuing search, which is not challenged in this appeal, was instead litigated by appointed counsel. We reject defendant's contention because the suppression motion was argued and decided before defendant was granted authority to proceed pro se. We see no constitutional error in the judge's decision to deny defendant's request to re-litigate a motion that had already been decided.

As noted, a pro se litigant has the right to make motions and argue points of law. Dubois, 189 N.J. at 466 (citing McKaskle, 465 U.S. at 174). That right does not automatically entitle a pro se defendant to re-litigate motions that were decided before the defendant waived the right to appointed counsel and was formally accorded the right of self-representation. Nor was the trial court obliged to delay ruling on the suppression motion until after deciding whether to grant defendant's request to proceed pro se. The sequence of deciding pending motions is a matter vested in the discretion of the trial court. See R. 3:9-1(d) (authorizing the trial court to set dates for hearing pretrial motions and

29

explaining "the court may in its discretion . . . schedule any necessary pretrial hearings").

At bottom, the record in this case makes clear that the Law Division in this case showed great respect, and commendable patience, with regard to defendant's right to litigate motions once he formally attained pro se status.

B.

Defendant next contends he was deprived of his right of self-representation when the trial court required that defendant's testimony be elicited through questions posed by standby counsel rather than in a narrative format or by having defendant question himself. Although defendant refers to cases where trial courts happened to allow the defendant to testify by narrative, defendant cites to no New Jersey case that holds, or even suggests, that a pro se defendant is entitled as of right to present testimony through a narrative format.[7]

We hold that as part of a trial court's general authority to control the proceedings, including the "mode . . . of interrogating witnesses," N.J.R.E. 611(a), the court has broad discretion in deciding whether to allow a pro se

---

[7] See State v. Rubenstein, 104 N.J.L. 291, 294 (Sup. Ct. 1928), where it was held that the court did not err in requiring the direct examination of the plaintiff by question and answer, not narrative form, because it is "a matter within the discretion and control of the trial court."

defendant to testify in a narrative fashion or to require instead that defendant's testimony be elicited through questions posed by standby counsel. See United States v. Beckton, 740 F.3d 303, 306 (4th Cir. 2014) (explaining that trial management decisions such as "whether [a pro se defendant's] testimony shall be in the form of a free narrative or responses to specific questions" are discretionary (quoting Fed. R. Evid. 611 advisory committee's note)).

Although the trial court acted within its discretion in precluding defendant from testifying in a free narrative, the decision to require a pro se defendant to testify by answering questions posed by standby counsel is subject to an important caveat: it is for a self-represented defendant, not standby counsel, to decide ultimately what testimonial evidence the defense presents to the jury. Defendant contends in this regard that standby counsel did not ask questions that defendant wanted to have posed to him on the witness stand, thereby impeding his right of self-representation.

In addressing this argument, we first note that it is not the role of standby counsel or a trial judge to prevent a pro se defendant from pursuing a reckless or foolhardy trial strategy. See King, 210 N.J. at 21. ("[N]o matter how well-intentioned, [a trial court] cannot override [a] defendant's exercise of his [or her] right to decide to represent himself [or herself]."). Defendant was explicitly

31

warned that by accepting the right of self-representation, he was waiving the right to claim ineffective assistance of counsel. See Faretta, 422 U.S. at 834 n.46 ("[A] defendant who elects to represent himself [or herself] cannot thereafter complain that the quality of his [or her] own defense amounted to a denial of 'effective assistance of counsel.'"). "[E]ven in cases where the accused is harming himself by insisting on conducting his own defense, respect for individual autonomy requires that he be allowed to go to jail under his own banner if he so desires and if he makes the choice '"with eyes open."'" United States ex rel. Maldonado v. Denno, 348 F.2d 12, 15 (2d Cir. 1965).

While standby counsel may caution a pro se client of the perils of his or her intended course of action and offer advice on a sounder approach, counsel must not interfere with a pro se defendant's chosen trial strategy, however ill-conceived or self-defeating. Reddish, 181 N.J. at 597–98. As a general proposition, therefore, a pro se defendant should be permitted to give testimony that standby counsel and the court know from their experience might lessen the chances for acquittal. It plainly appears that is exactly what happened in this case.

Before defendant testified on his own behalf, the trial court explored whether defendant and standby counsel had an opportunity to review the

questions that would be posed during defendant's direct examination. During this colloquy, standby counsel explained to the court:

> Okay. Well, Judge, this morning I received a couple of pieces of information. One is questions, I think there's 215 of them here. Okay. And another one has another 40 or 50 of them, I guess. And I had spoken to the client about the fact that where the case is at this point in time, what type of information the jury's already seen, and the focus of the questions mainly on the four individuals who testified, whereas some of these other questions are more far reaching and into various other, if you will, collateral areas, and I had basically indicated to him that I have a series of questions, a limited number of questions. The questions are designed to allow him to give his version to the jury, because I think that's what the jury wants to hear. They heard the State's version. Now it's [their] opportunity to hear his version, and <u>obviously he would have to have latitude and we try to ask general questions to allow that to happen</u>.
>
> [Emphasis added.]

Later in the colloquy, the trial court explained, "[s]o I think what [standby counsel] is saying is that not necessarily every question he would ask, because he's trying his best, also, to focus you towards . . . the objective of being found not guilty, but he's going to ask a number of those questions."

33 <span>A-0496-17T1</span>

The court then asked defendant whether that made sense, to which defendant replied "[o]kay."

The record thus shows that while standby counsel did not pose every specific question that defendant may have drafted, he did pose general questions designed to afford defendant the latitude to present his own version. We believe it is especially important that defendant on appeal does not point to a single testimonial fact that he wanted to present to the jury but was precluded from doing so by the question-and-answer format as it was actually employed in this case. In other words, defendant does not specify any admissible evidence[8] in support of his trial strategy that he was not able to place before the jury during his trial testimony.

In sum, defendant has not shown how the question-and-answer format as actually applied in this case substantially interfered, if at all, with the presentation of his trial strategy. We add that defendant does not claim on appeal that the trial court or standby counsel impeded him from presenting his

---

[8] While a self-represented defendant has the right to decide what evidence the defense presents, he or she has no right, of course, to introduce inadmissible testimony. See Dubois, 189 N.J. at 468 (requiring a court to advise a defendant that is seeking to proceed pro se of the necessity that he or she comply with the rules of evidence). The right of self-representation, in other words, in no way restricts a trial court's authority and discretion in making evidentiary rulings or otherwise managing the trial proceedings.

A-0496-17T1

arguments in his summation to the jury. We therefore conclude that defendant was afforded, through the combination of his testimony and arguments, "a fair chance to present his case in his own way." McKaskle, 465 U.S. at 177.

VII.

Defendant claims for the first time on appeal that the trial court should have sua sponte severed the counts involving each child victim. Defendant argues that by aggregating the offenses involving all four child victims into a single trial, the State improperly suggested that defendant had a propensity for child predation.

Defendant is hard pressed to complain that the joinder of charges inappropriately suggested his predisposition for pedophilia given that his trial strategy emphasized that he was sexually attracted to young boys and had the right to perform acts prohibited by law and charged in the superseding indictment. It was defendant, in other words, who placed his sexual predisposition squarely before the jury.

We add that even in the absence of such an unusual defense strategy, joinder of similar charges may be permitted in sex abuse and child pornography cases involving multiple victims. See State v. Davis, 390 N.J. Super. 573, 599 (App. Div. 2007) (concluding that failing to sever the case was not "clearly

capable of producing an unjust result" (quoting R. 2:10-2)); State v. Krivacska, 341 N.J. Super. 1, 37 (App. Div. 2001) ("Our procedural rules provide that two or more indictments or accusations may be tried together if, among other things, the offenses charged 'are of the same or similar character.'" (quoting R. 3:7-6)).

Defendant next contends, again for the first time on appeal, that the judge should have instructed the jurors to disregard the evidence relating to charges that were dismissed at the end of the State's case. Defendant claims that by not doing so, defendant was unfairly convicted on the basis of additional propensity evidence. We disagree.

The grand jury indicted defendant on charges relating to a fifth child victim, A.P. This child chose not to testify. As a result, after the prosecution rested, the trial court dismissed the counts pertaining to A.P. We agree with defendant that the trial court should have instructed the jury to disregard any evidence that had been presented concerning this child. In this instance, however, the trial court's failure to instruct the jury to disregard that evidence does not rise to the level of plain error as it was not clearly capable of producing an unjust result. R. 2:10-2. As noted, defendant chose to place his sexual predisposition with respect to young boys before the jury as the foundation of his defense strategy. Furthermore, the State's evidence of guilt with respect to

the criminal acts involving the four children who did testify was essentially uncontroverted and unquestionably overwhelming.

Defendant next asserts that Detective Andrea Tozzi, who defendant called as a witness, improperly testified from her personal experience. She testified it was not unusual that a child would not immediately disclose sexual penetration to her during an interview. Defendant argues that such testimony was tantamount to expert testimony about "Child Sexual Assault Accommodation Syndrome" (CSAAS) in large degree now prohibited by the new rule announced in State v. J.L.G., 234 N.J. 265, 272 (2018), which we held applied retroactively in State v. G.E.P., 458 N.J. Super. 436, 448 (App. Div.), certif. granted, 239 N.J. 598 (2019).

The circumstances of Detective Tozzi's comment are significantly different from the circumstances in J.L.G. The Supreme Court ruled that expert testimony about CSAAS is not reliable except as to delayed disclosure. J.L.G., 234 N.J. at 272. Here, the comment defendant contends was improper related to delayed disclosure. Furthermore, Detective Tozzi was at no time presented as an expert witness. Her brief comment related to her personal experience interviewing young sexual abuse victims and their reluctance to disclose sexual acts such as masturbation and anal self-penetration. Furthermore, the detective's

comment was elicited in response to defendant's suggestion that she had attempted to improperly influence the children by asking them questions about sexual penetration. In these circumstances, we conclude that no improper bolstering of the State's case occurred. See State v. B.M., 397 N.J. Super. 367, 380–81 (App. Div. 2008) (explaining the "opening the door" doctrine, which allows responsive evidence that would otherwise be inadmissible).

Even if Detective Tozzi's answer were deemed to be inadmissible, her brief, isolated remark was not clearly capable of producing an unjust result, Rule 2:10-2, considering the overwhelming strength of the State's case with respect to defendant's role in inducing the child victims to video record themselves in the act of masturbation and anal penetration.

Defendant further claims that the State improperly attacked his credibility by eliciting that defendant promised the children he would not save the videos or pictures so as to persuade the children to send them. We conclude that the trial court did not abuse its discretion in ruling this testimony was admissible to show the influence defendant exercised over the children. See State v. Scott, 229 N.J. 469, 479 (2017) (stating evidential rulings are only disturbed on appeal if there was a "clear error in judgment . . . so wide of the mark that a manifest denial of justice resulted") (quoting State v. Perry, 225 N.J. 222, 223 (2016))).

Finally, with respect to defendant's trial-related contentions, we agree—and the State on appeal does not dispute—that it was inappropriate for the prosecutor in summation to remark, "[s]o much for the defendant's argument that he was always truthful." This isolated, off-hand comment in no way affected the outcome of the trial. R. 2:10-2; see also State v. Wakefield, 190 N.J. 397, 467 (2007) (holding that reviewing courts should not reverse unless the prosecutor's conduct was "so egregious that it deprived the defendant of a fair trial" (quoting State v. Pennington, 119 N.J. 547, 565 (1990))).

In sum, any evidentiary, prosecutor comment, or jury-instruction errors that may have occurred are minimal and, even when viewed cumulatively, provide no reason to reverse defendant's convictions in light of the overwhelming evidence presented by the State and by the defendant through his admissions. We therefore do not hesitate to conclude that none of the alleged trial errors, singly or collectively, "cast[] doubt on the propriety of the jury verdict." State v. Jenewicz, 193 N.J. 440, 474 (2008).

We similarly reject defendant's contentions regarding the sentence that was imposed. The trial court did not engage in impermissible double-counting, as defendant claims, when it found aggravating factor two, which focuses on the gravity and seriousness of the offense. N.J.S.A. 2C:44-1(a)(2). Although

"[e]lements of a crime, including those that establish its grade, may not be used as aggravating factors for sentencing of that particular crime," State v. Lawless, 214 N.J. 594, 608 (2013), a court "does not engage in double-counting when it considers facts showing defendant did more than the minimum the State is required to prove to establish the elements of an offense." State v. A.T.C., 454 N.J. Super. 235, 254–55 (App. Div. 2018) (citing State v. Fuentes, 217 N.J. 57, 75 (2014)). Here, the judge properly found aggravating factor two based on a "pragmatic assessment of the totality of the harm inflicted by the offender on the victim." State v. Kromphold, 162 N.J. 345, 358 (2000).

The child victims in this case presented compelling evidence of the harm defendant inflicted by befriending them, confusing them, and ultimately inducing them to engage in perverse sexual acts. This form of emotional and psychological harm is not an element of the offenses for which defendant was convicted, and, therefore, the sentencing court's careful attention to this type of harm does not constitute double-counting. A.T.C., 454 N.J. Super. at 254–55. Rather, this harm properly supports a finding of aggravating factor two. State v. Logan, 262 N.J. Super. 128, 132 (App. Div. 1993) (upholding a finding of psychological damage to support aggravating factor two).

Defendant's second sentencing contention, that the judge failed to find mitigating factor four,[9] is also without merit. Although "mitigating factors that are suggested in the record, or are called to the court's attention, ordinarily should be considered," in this instance, defendant failed to establish any legitimate basis upon which to conclude that there were substantial grounds to excuse or justify his conduct. State v. Blackmon, 202 N.J. 283, 297 (2010) (citing State v. Dalziel, 182 N.J. 494, 504-05 (2010)). Defendant asserts that he suffers from a mental disease or defect and trauma from a troubled youth. See State v. Briggs, 349 N.J. Super. 496, 504 (App. Div. 2002) (recognizing prior abuse and mental illness are "highly relevant" when determining if mitigating factors apply). But he has offered no evidence of any such mental impairment and no such impairment was revealed in his competency evaluation or in his numerous motions before the court. Furthermore, the record shows defendant never offered evidence that he was traumatized by a troubled childhood.

Next, defendant claims that the court improperly imposed a combined Sex Crime Victim Treatment Fee of $16,500 pursuant to N.J.S.A. 2C:14-10. In calculating an appropriate amount, the sentencing court must consider not only

---

[9] See N.J.S.A. 2C:44-1(b)(4) ("There were substantial grounds tending to excuse or justify the defendant's conduct, though failing to establish a defense.").

the nature and circumstances of the offenses committed but also the defendant's ability to pay. State v. Bolvito, 217 N.J. 221, 234 (2014). In doing so, the court "should look beyond the defendant's current assets and anticipated income during the period of incarceration." Ibid.

In this instance, the sentencing judge considered facts about defendant, such as his work history, that led the judge to conclude that defendant could pay this amount at some point following his release. Any such analysis necessarily involves speculation as to a defendant's earning potential in the distant future. We also recognize, as defendant aptly notes, that convicted sex offenders may face special difficulties in finding gainful employment upon their release from prison.

Given the inherent imprecision in predicting a defendant's future income, we do not believe the sentencing court abused its discretion when it found that defendant will be able to pay $16,500. We decline to substitute our own prediction of defendant's future earnings in place of the sentencing court's estimation. Nor do we believe the sentencing court abused its discretion with respect to its findings pursuant to Bolvito regarding the nature and circumstances of the offenses defendant committed. See Fuentes, 217 N.J. at 70

(holding that appellate courts apply the abuse of discretion standard when reviewing a judge's sentencing decision).

Finally, while defendant is without question subject to parole supervision for life pursuant to N.J.S.A. 2C:43-6.4, and to the requirements of Megan's Law pursuant to N.J.S.A. 2C:7-2, we agree with defendant that the trial court erred in imposing parole supervision for life on defendant's conviction for count two. However, the judgment of conviction (JOC) does not reflect that this sanction was imposed on that particular count, so there is no need to correct the JOC.

## VIII.

To the extent we have not already addressed them, any other arguments raised by defendant in this appeal, whether in the brief submitted by counsel or defendant's pro se brief, see supra note 4, do not have sufficient merit to warrant discussion in this written opinion. R. 2:11-3(e)(2).

## IX.

For the foregoing reasons, we remand the case to the Law Division to assess defendant's speedy trial claim in accordance with the instructions set forth in Section IV of this opinion. In all other respects, we reject defendant's contentions and affirm his convictions and sentence. We do not retain jurisdiction.

Affirmed in part and remanded for proceedings consistent with this opinion.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION