**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2574-17T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MICHAEL A. SANTOS,

    Defendant-Appellant.

_____

Argued telephonically May 7, 2020 –
Decided July 8, 2020

Before Judges Alvarez and Suter.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Indictment No. 16-11-2186.

Brian P. Keenan, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Brian P. Keenan, of counsel and on the brief).

William Kyle Meighan, Senior Assistant Prosecutor, argued the cause for respondent (Bradley D. Billhimer, Ocean County Prosecutor, attorney; Samuel Marzarella, Chief Appellate Attorney, of counsel; William Kyle Meighan, on the brief).

PER CURIAM

Defendant Michael A. Santos was convicted of the disorderly persons offense of possession of prescription drugs not in the original container[1]; third-degree possession of CDS with intent to distribute (oxycodone) (count two), N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(5); and third-degree distribution of CDS (oxycodone) (count three), N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(5).[2] The court granted the State's motion to sentence defendant to an extended term. He was sentenced to five years of drug court probation with an alternative sentence of six years imprisonment with a thirty-six-month period of parole ineligibility on count three, five years on count two and six-months on count one as amended, all to be served concurrently. Defendant appeals his January 23, 2018 judgment of conviction, which we now affirm.

---

[1] This was the lesser included offense of third-degree possession of a controlled dangerous substance (CDS) (oxycodone) (count one), N.J.S.A. 2C:35-10(a)(1).

[2] He was acquitted of counts four and five of the indictment charging possession of the CDS Alprazolam and possession of it with the intent to distribute.

While conducting surveillance for drug activity at a Wawa with other officers, Patrolman Andrew Chencharik of the Toms River Police Department testified at the suppression motion that Patrolman Ryan Quinn reported observing a car pull into the parking lot, circle the lot once and leave. The car returned a short time later, parking in a location away from the business, and the female driver got out. She walked to a silver Nissan Altima on a side street and got in it. The Altima drove up the street, turned around and came back, dropping the woman off in the same place she had gotten in. The Altima left, heading east on Route 37.

Chencharik requested that a marked patrol unit stop the Altima. He arrived shortly afterwards. Defendant was nervous and shaking when he got out of the car. Defendant told Chencharik he had "no reason" for meeting the woman at the Wawa, who he identified by her first name, Haley.

Quinn, who was still at the Wawa, advised Chencharik that he stopped the woman, Haley McAteer, after she discarded something in the bushes. She acknowledged purchasing drugs from "Mike from the [Altima]." Oxycodone pills were recovered from the bushes.

Defendant was placed under arrest and read the Miranda[3] rights. Chencharik searched the Altima, recovering both oxycodone and alprazolam from pill bottles in the center console. Defendant had $429 in cash in his pocket.

Defendant's motion to suppress the pills was denied, the trial court finding the police had a reasonable suspicion to stop defendant's vehicle. The court noted the officers were conducting surveillance in an area known by them "to have a high rate of drug activity." McAteer's actions gave the officers reasonable suspicion of some type of drug activity, enough to stop defendant's vehicle. The trial court also found the officers had probable cause to search the vehicle because McAteer entered defendant's vehicle to make the purchase and "identified the pills that she purchased from him . . . ."

Following a hearing in August 2017, defendant's motion to proceed pro se was granted. His attorney was appointed as stand-by counsel. Defendant represented himself at his motion to suppress the statement he gave to the police after he was stopped. That motion was denied and thereafter defendant requested the reinstatement of his attorney, which was granted.

At the trial in October 2017, McAteer testified she arranged to purchase four oxycodone pills from defendant, agreeing to meet at the Wawa. When she

---

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

A-2574-17T1

did not see him on her first drive through the parking lot, she texted defendant, who instructed her where to meet. She got into his car, purchased the pills, and as she was returning to her car, saw an officer in the parking lot. She threw the pills into the bushes.

Quinn's attention initially was drawn to McAteer's vehicle because of the speed she was driving, while using her cell phone. He watched as she parked and walked over to defendant's vehicle. As she walked back toward her car, he identified himself as a police officer. Quinn did not see her throw the pills in the bushes, but she told him she did,[4] and the pills were recovered.

Chencharik testified the pills were found in two bottles: one was an oxycodone prescription for defendant filled in August 2016, and the other was an Advil bottle.

Defendant testified he met McAteer at the Wawa because he lived near there and needed to borrow $200 to pay for a friend's medical appointment. He claimed they talked briefly, and she gave him the money. He denied moving his car. He testified the Advil bottle and contents were not his.

On appeal, defendant raises these issues:

---

[4] She claimed this was after he threatened to impound her car and have her strip searched. The officer denied this.

A-2574-17T1

POINT I

THE MOTION JUDGE ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS BECAUSE THE POLICE LACKED REASONABLE SUSPICION TO STOP DEFENDANT'S CAR.

POINT II

THE MOTION JUDGE'S FAILURE TO SECURE A KNOWING AND VOLUNTARY WAIVER BEFORE ALLOWING MR. SANTOS TO PROCEED PRO SE, DEPRIVED HIM OF HIS RIGHT TO COUNSEL PRIOR TO THE TRIAL AND DURING THE MIRANDA HEARING.

POINT III

THE TRIAL JUDGE'S HIGHLY PREJUDICIAL ERROR IN PERMITTING LAY OPINION TESTIMONY BY TWO OFFICERS AS TO THE ULTIMATE ISSUE IN THE CASE USURPED THE ROLE OF THE JURY AND REQUIRES REVERSAL.

POINT IV

THE TRIAL JUDGE'S FAILURE TO ISSUE A CURATIVE INSTRUCTION TO THE JURY WHEN SANTOS' TESTIMONY REVEALED PRIOR BAD ACTS DURING DIRECT EXAMINATION REQUIRES REVERSAL.

POINT V

THE CUMULATIVE EFFECT OF THE AFOREMENTIONED ERRORS DENIED DEFENDANT A FAIR TRIAL.

A-2574-17T1

II.

A.

Defendant argues the trial court erred by denying his suppression motion because the police had no reasonable, articulable suspicion to stop his car. "An appellate court reviewing a motion to suppress evidence in a criminal case must uphold the factual findings underlying the trial court's decision, provided that those findings are 'supported by sufficient credible evidence in the record.'" State v. Boone, 232 N.J. 417, 425-26 (2017) (quoting State v. Scriven, 226 N.J. 20, 40 (2016)). We do so "because those findings 'are substantially influenced by [an] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" State v. Gamble, 218 N.J. 412, 424-25 (2014) (alteration in original) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). We owe no special deference, however, to conclusions of law made by trial courts in suppression decisions, which we review de novo. State v. Watts, 223 N.J. 503, 516 (2015).

An investigatory stop implicates constitutional requirements. State v. Elders, 192 N.J. 224, 247 (2007). Sometimes referred to as a Terry[5] stop, an investigatory stop does not require a warrant if it is based on "specific and

_____

[5] Terry v. Ohio, 392 U.S. 1 (1968).

articulable facts which, taken together with rational inferences from those facts," provide a "reasonable suspicion of criminal activity." Ibid. (quoting State v. Rodriquez, 172 N.J. 117, 126 (2002)).

Whether a reasonable and articulable suspicion exists depends upon the totality of the circumstances. State v. Pineiro, 181 N.J. 13, 22 (2004). A court must consider whether the "historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion." State v. Stovall, 170 N.J. 346, 357 (2002) (quoting Ornelas v. United States, 517 U.S. 690, 696 (1996)). An officer's experience and knowledge in applying the totality of the circumstances test may also be considered. Id. at 361. "[D]ue weight must be given . . . to the specific reasonable inferences which [an officer] is entitled to draw from the facts in light of his [or her] experience." Ibid. (alterations in original) (quoting Terry, 392 U.S. at 27).

The record supported the trial judge's finding a reasonable suspicion existed that a drug transaction occurred between defendant and McAteer. McAteer drove through the Wawa parking lot and returned. She parked away from the entrance of the store, exited, leaving a passenger in the car, and walked to defendant's car. Defendant's car then went a short distance, made a turn and returned to the same location. The police were surveilling the Wawa because of

drug activity. It was reasonable to conclude McAteer's behavior was not the behavior of a customer of the Wawa nor a person meeting someone for a ride, but was more reasonably consistent with a short transaction.

B.

The trial court granted defendant's request to have his public defender relieved as his attorney. Defendant argues for the first time on appeal that his waiver of counsel was not knowing and voluntary, and deprived him of his right to counsel. Defendant contends the trial judge did not advise him of the sentencing range for an extended range sentence, was not advised of the elements of the charges or defenses, was not advised he had to follow the rules and was not aware of his right to remain silent.

A criminal "[d]efendant possesses both the right to counsel and the right to proceed to trial without counsel." State v. DuBois, 189 N.J. 454, 465 (2007). His or her right to self-representation may be exercised "only by first knowingly and intelligently waiving the right to counsel." State v. Crisafi, 128 N.J. 499, 509 (1992) (citing McKaskle v. Wiggins, 465 U.S. 168, 173 (1984)). Trial courts are required to inform a defendant who asserts a right to self-representation of:

> (1) the nature of the charges, statutory defenses, and possible range of punishment; (2) the technical

problems associated with self-representation and the risks if the defense is unsuccessful; (3) the necessity that defendant comply with the rules of criminal procedure and the rules of evidence; (4) the fact that lack of knowledge of the law may impair defendant's ability to defend himself; (5) the impact that the dual role of counsel and defendant may have; (6) the reality that it would be unwise not to accept the assistance of counsel; (7) the need for an open-ended discussion so that the defendant may express an understanding in his or her own words; (8) the fact that, if defendant proceeds pro se, he or she will be unable to assert an ineffective assistance of counsel claim; and (9) the ramifications that self-representation will have on the right to remain silent and the privilege against self-incrimination.

[DuBois, 189 N.J. at 468-69.]

Here, defendant asked to replace his attorney because they had a "difference of opinions and . . . haven't seen eye to eye." This was just a few days before the scheduled trial date. In the hearing, the court inquired about defendant's education and knowledge of the law, generally. Defendant was aware of the charges, alerting the court he had a possession with intent to distribute charge. He advised he "[a]bsolutely" had a defense to the major charge, believing a message on his cell phone and a prescription printout from his pharmacy had the potential to exonerate him. Defendant was aware of his prior criminal record. The court told defendant he was in significant jeopardy of a longer sentence. "[T]he problem is in a case like this . . . you face a

10

significant amount of time that someone else who doesn't have a prior record would not face."  Regarding the potential for a longer sentence, defendant advised the court: "I'm told, sir.  We went over that[,]" apparently making reference to the Pretrial Memorandum that listed the maximum jail time for each count and mandatory periods of parole ineligibility.

The court was clear it would be better for defendant to have an attorney. "[C]learly . . . the scales of justice say that it's better to have an attorney . . . you're not comfortable with."  The court added, "a lawyer can argue things on your behalf because he is an adversarial professional . . . [and] [an] absolute professional . . . in representing defendants."  The court urged defendant to keep his attorney and continued him as stand-by counsel.

The court advised defendant "not to make any statements about the facts in your case because that's something that could be possibly used against you at this point in time."  He was told he risked the loss of a drug court sentence.  The trial court cautioned defendant to follow the rules even though self-represented, stating "you have to be respectful [at trial], you have to abide by the rules."  The court encouraged an open-ended discussion on several occasions.

A-2574-17T1

We are satisfied from our review of the record that the trial court complied with the principles of <u>Reddish</u>[6] and <u>Crisafi</u>, and that defendant's right to counsel was not denied. He was aware of the charges against him, his need to follow the rules, the risk that his statements could be used against him and that his sentence could be affected by his criminal record.

## C.

Defendant argues the trial court erred by permitting lay opinion testimony by two police officers about whether a drug sale occurred. Because there was no objection to the testimony at trial, the question is whether the testimony was "of sufficient magnitude to raise a reasonable doubt as to whether it led the jury to a result it would otherwise not have reached." <u>State v Weston</u>, 222 N.J. 277, 294 (2015) (quoting Pressler & Verniero, <u>Current N.J. Court Rules</u>, cmt. 2.1 on <u>R.</u> 2:10–2).

Police officers can "testify as lay witnesses, based on their personal observations and their long experience in areas where expert testimony might otherwise be deemed necessary." <u>State v. LaBrutto</u>, 114 N.J. 187, 198 (1989). The testimony "must be . . . firmly rooted in the personal observations and perceptions of the lay witness in the traditional meaning of the Rule 701." <u>State</u>

_____

[6] <u>State v. Reddish</u>, 181 N.J. 553 (2004).

v. McLean, 205 N.J. 438, 459 (2011).  However, "[o]pinion testimony . . . is not a vehicle for offering the view of the witness about a series of facts that the jury can evaluate for itself or an opportunity to express a view on guilt or innocence." Id. at 462.

In the present case, both Quinn and Chencharik were asked, based on their training to opine about what they thought occurred from what they observed. Both responded that they believed a drug transaction occurred.

We agree it was error for the police officers to testify based on their training and experience that a drug sale had taken place.  Id. at 463.  This was not an error, however, that requires reversal.

This case is not like McLean.  In McLean, the defendant's conviction was based entirely on the testimony by the officers about what they observed.  Ibid. Here, there was other evidence a drug sale occurred.  McAteer testified at trial, admitting having purchased drugs from defendant, the police had probable cause to arrest defendant, and pills with the same markings to those purchased by McAteer were found in defendant's vehicle.  The jury found defendant guilty of possession of prescription drugs outside the container in which dispensed, the lesser included offense under count one, and not of possession of oxycodone,

indicating its consideration of all the evidence. He also was acquitted on two other counts.

We are satisfied, therefore, the error was harmless, not warranting a new trial.

D.

Defendant argues he was deprived of his right to a fair trial because the trial court did not give a curative instruction to the jury after defendant testified he was taking more painkillers than prescribed and had not paid taxes for several years. The court cautioned defendant to answer the questions he was asked and then instructed the jury: "Ladies and gentlemen, I'm instructing you that I've given him those warnings. Some of the things that were said are things that are not really appropriate as far as being in front of you. I'm trying not to interrupt at this time. Mr. Santos, please follow those instructions." Because there was no request for a curative instruction at trial, we review this issue for plain error. See State v. Wakefield, 190 N.J. 397, 456-57 (2007) (quoting State v. Bucanis, 26 N.J. 45, 57 (1958)).

The "bad acts" testimony was not offered by the State but was volunteered by defendant on direct examination. Given its brief nature, contemporaneous comments by the judge, lack of objection at the time and in light of the jury's

verdict, where defendant was acquitted on some charges, we do not agree that this was the type of error that would lead to an unjust result.

E.

Defendant contends that there were cumulative errors committed during trial that warrant reversal. Since we have found no errors capable of producing an unjust result, we need not discuss whether there were cumulative errors. See R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION