916 A.2d 450

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v.
PASCAL DUBOIS, DEFENDANT–RESPONDENT.

Argued October 30, 2006—Decided March 8, 2007.

458

*Joie D. Piderit,* Deputy Attorney General, argued the cause for appellant (*Stuart Rabner,* Attorney General of New Jersey, attorney).

*Marc J. Friedman,* argued the cause for respondent.

Justice WALLACE, JR., delivered the opinion of the Court.

In this criminal proceeding, the trial court found that defendant knowingly and intelligently waived his right to counsel and permitted defendant to act as his own attorney with standby counsel. At trial, a jury ultimately found defendant guilty of multiple charges. On appeal, the Appellate Division reversed the convictions because it found the trial court failed to inform defendant fully of the risks created by self-representation. We granted the State's petition for certification, 186 *N.J.* 366, 895 *A.*2d 452 (2006), and now reverse, reinstate the judgment of conviction, and remand to the Appellate Division.

## I.

### A.

We need not recite the facts at length. On August 19, 1999, around 11:00 a.m., Amal Brohmi entered her apartment and was immediately confronted by her ex-husband, defendant Pascal DuBois. Defendant then threw Brohmi on the sofa, ripped off her dress, bound her hands, taped her mouth shut, and cut off her undergarments. While holding Brohmi down, defendant put a knife against her throat and sexually assaulted her. When defendant subsequently stepped into the bathroom, Brohmi escaped from the apartment. Defendant then left the apartment and drove off in Brohmi's car. Brohmi called the police from a neighbor's apartment.

Patrolman Patrick English of the Highland Park Police Department responded to the scene. Brohmi informed English that defendant had assaulted her and taken her car. Detective William Ducca obtained a statement from Brohmi and arranged for her to visit the Rape Crisis Center at Roosevelt Hospital. Brohmi advised Ducca that defendant resided in an apartment in Weehawken. The next day the police arrested defendant at his apartment.

Defendant was indicted for second-degree burglary, *N.J.S.A.* 2C:18–2; two counts of first-degree aggravated sexual assault, *N.J.S.A.* 2C:14–2a; second-degree sexual assault, *N.J.S.A.* 2C:14–2c; third-degree criminal restraint, *N.J.S.A.* 2C:13–2; third-degree aggravated assault, *N.J.S.A.* 2C:12–1b(7); third-degree terroristic threats, *N.J.S.A.* 2C:12–3b; two counts of third-degree possession of a weapon for an unlawful purpose, *N.J.S.A.* 2C:39–4d; third-degree criminal mischief, *N.J.S.A.* 2C:17–3a(1); and fourth-degree unlawful taking of a means of conveyance, *N.J.S.A.* 2C:20–10b.

### B.

We review in some detail the pretrial proceedings. On December 17, 1999, several months after his arrest, defendant appeared in court without counsel. He informed the trial court that he did not want counsel and intended to represent himself. The trial court asked defendant if he understood that he faced a first-degree crime with a maximum penalty of twenty years in prison. Defendant indicated that he understood. The trial court stated that defendant needed a lawyer and one would be available to represent him at his next court appearance.

Counsel was then assigned to represent defendant. On March 31, 2000, however, defendant's attorney informed the court that defendant was dissatisfied with him and wanted to proceed pro se. The court emphasized to defendant that while he appeared to be very intelligent and well-educated, it would be a great risk to proceed without counsel. Defendant insisted that he was willing

to take the chance. The court then scheduled a special hearing to determine if defendant could proceed pro se.

At a hearing on May 9, 2000, defense counsel announced that his relationship with defendant had deteriorated to the point that he could no longer represent defendant. The trial court granted counsel's motion to withdraw. The court then cautioned defendant to cooperate with any new counsel, noting that defendant's pro se papers demonstrated that he had "absolutely no understanding of what's going on in this case, or how the system works." The court then read all of the charges defendant faced and advised him of the possibility he could be sentenced to more than eighty years in prison.

At the October 2, 2000 hearing, defendant's newly-appointed lawyer informed the trial court that defendant did not want him as counsel. Defendant agreed and told the court that he was an educated man, had a college degree, and wished to represent himself. He stated that the last time he had an appointed counsel, he had to litigate against that counsel for confidentiality violations in a case that reached the Supreme Court, so he now wanted to proceed pro se. He asked for library privileges to prepare for trial and sought a trial date. Defendant also noted that he had filed a pro se motion for a speedy trial in December 1999, and that it had not yet been heard.

The trial court informed defendant that he would be held to the same standards as a practicing attorney and must comply with the court rules. Defendant replied that he understood and would abide by those rules. The court cautioned that defendant would be at a disadvantage if he represented himself and inquired whether he had considered all the factors in making his decision. Defendant replied that he had spent over thirteen months in the law library, five days a week, and that he had learned more there and in court than if he had gone to law school. He said he fully understood what he was facing, and that if he were going to be found guilty, he wanted to be his own lawyer. The trial court again explained the range of penalties if he were convicted.

Defendant stated that he understood and that he would prove his innocence at trial.

The court indicated that it wanted to review both the defendant's speedy trial motion, as well as the status of defendant's interlocutory appeal from the denial of his motion to dismiss the indictment. As a result, the court agreed to address defendant's motion to proceed pro se at the next hearing two weeks later.

On October 16, 2000, the trial court again reviewed with defendant all of the charges and potential penalties. Defendant again confirmed that he understood the consequences if he were found guilty. The court further advised defendant that consent was a defense to the aggravated sexual assault charges and that permission to enter was an affirmative defense to criminal trespass, the lesser-included offense of burglary. At one point during the exchange, defense counsel interrupted and asked to speak to defendant. The court granted permission and defense counsel advised defendant of his Fifth Amendment rights. When the court asked defendant if he would follow the procedural and evidentiary rules, defendant said he would, and also requested standby counsel.

Following the colloquy with defendant, the trial court ruled as follows:

All right. I had the opportunity to have questioned [defendant] with respect to his intention and desire to proceed pro se in this matter. The Supreme Court is clear in determining that an individual has a constitutional right to represent himself in order to determine whether or not an individual has appropriately invoked that right. The Court is required to conduct a thorough inquiry. I am satisfied that I have at length gone into the number and nature of the charges as well as the possible, some of the possible defenses in this matter as well as the range of punishment in the event of conviction of these offenses. [Defendant] is persistent in his pursuit of his right to represent himself. I have had the opportunity to have read through the applications that he made to the Court up to this point in time that have not been disposed of pending the pro se application and it is clear that [defendant], although we feel [defendant] that you have a complete handle on things, that there are certain things perhaps that you don't understand about representing yourself.

At this point, defendant interrupted the court, acknowledged that he was not an expert in legal matters, and requested standby counsel to assist him.

The trial court granted defendant's request to proceed pro se and, over defendant's objection, appointed his current counsel as standby counsel. Defendant indicated that he expected standby counsel to help him obtain discovery. The trial court then agreed to schedule defendant's other pro se motions on another date.

At the hearing in November 2000, defendant again sought to remove standby counsel, asserting that he was not receiving effective legal assistance from him. The trial court explained that standby counsel was there to assist him and that he could either proceed with his present standby counsel or abandon his desire to proceed pro se and allow counsel to represent him. The court reminded defendant that there had been an exhaustive questioning of his request to proceed pro se and that he had convinced the court he understood what he was doing and voluntarily wanted to represent himself. The trial court observed:

> I mean I understand that you went into it eyes wide open. I told you all the consequences and the ramifications and the pitfalls and what you need to know by way of following the rules and the rulings of court, the rules of evidence and you answered affirmatively. You understood all that and you still wanted to do it. But I have serious concerns about your doing that. If you indicate to me that you know that is still your choice that's fine, but I want you to consider your decision again in light of the fact [that counsel] is here. I'm going to ask [counsel] if he's ready, willing and able to represent you in this matter. He's a competent attorney, represents many individuals by way of his status as a criminal attorney both through the pool status with the Public Defender's Office and privately.

Defendant agreed with the court's comments about defense counsel's competency, but claimed his standby counsel had a possible conflict of interest because of his representation of another inmate in defendant's cellblock. After the court explained that standby counsel was assigned by the Public Defender's Office, defendant agreed to contact the Public Defender's Office about the potential conflict.

Defendant represented himself during the ensuing trial, with standby counsel at his side. The two conferred on various occa-

sions during trial. The jury ultimately found defendant guilty of burglary, aggravated sexual assault, sexual assault, assault, possession of a weapon for an unlawful purpose, criminal mischief, and taking a means of conveyance. The trial court imposed an aggregate sixteen-year term of imprisonment with an eighty-five percent period of parole ineligibility.

## C.

Defendant appealed, claiming, among other things, that the trial court erred by granting his request to proceed pro se because it improperly determined that his waiver was knowing and intelligent. The Appellate Division agreed and reversed defendant's conviction in an unpublished opinion. The panel held that the trial court failed to explain to defendant the technical problems that might arise from self-representation and that it would not be advisable to proceed without counsel. Furthermore, the panel disapproved of the trial court questioning defendant concerning his desire to proceed pro se in several proceedings rather than in one, noting that the inquiry should occur in one proceeding to avoid the possibility that defendant would forget what he was told in an earlier proceeding. We granted the State's petition for certification. 186 *N.J.* 366, 895 *A.*2d 452 (2006).

## II.

The State argues that the trial court properly engaged defendant in the inquiries required under *State v. Crisafi,* 128 *N.J.* 499, 608 *A.*2d 317 (1992) and *State v. Reddish,* 181 *N.J.* 553, 859 *A.*2d 1173 (2004) before concluding that his waiver of the right to counsel was knowing and intelligent. Inherent in the State's argument is the view that we should consider all of defendant's court appearances and that the mandated questioning need not occur at one hearing. Additionally, the State notes that *Reddish* was decided four years after the hearing in this case and requests that the Court not apply it retroactively.

Defendant argues that he did not knowingly and intelligently waive his right to counsel. He focuses primarily on the October 16, 2000 hearing and contends that several of the requirements of *Crisafi* were omitted from that hearing. Further, defendant argues that even if the entirety of the hearings are considered, all of the appropriate questions concerning pro se representation were not covered. Alternatively, defendant argues that, even if the trial court addressed all the appropriate areas in multiple hearings, it could not have relied on statements made during those hearings to determine whether defendant's waiver was knowing and intelligent. He contends that the court could not make those determinations because it was the last trial court's "obligation to assess the credibility of the defendant to determine whether his waiver was knowing and intelligent," and the last trial court did not preside over all the prior hearings. Therefore, he argues that the content of the earlier hearings is irrelevant.

### III.

### A.

Defendant possesses both the right to counsel and the right to proceed to trial without counsel. The Sixth Amendment to the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution guarantee criminal defendants the right to counsel at trial. In *Faretta v. California,* the United States Supreme Court held that the Sixth Amendment, which applies to the states via the Fourteenth Amendment, gives criminal defendants the right to proceed without counsel when they voluntarily and intelligently elect to do so. 422 *U.S.* 806, 818, 95 *S.Ct.* 2525, 2532, 45 *L.Ed.*2d 562, 572 (1975). "The right to defend is given directly to the accused; for it is he [or she] who suffers the consequences if the defense fails." *Id.* at 819–20, 95 *S.Ct.* at 2533, 45 *L.Ed.*2d at 572–73. The Court explained that because a pro se defendant will not have "many of the traditional benefits associated with the right to counsel," it is necessary that the accused " 'knowingly and intelligently' forgo those relinquished

benefits." *Id.* at 835, 95 *S.Ct.* at 2541, 45 *L.Ed.*2d at 581 (citations omitted). The Court also emphasized that trial courts must ensure that a defendant's decision is reasonably informed, stating that

[a]lthough a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open."

[*Id.* at 835, 95 *S.Ct.* at 2541, 45 *L.Ed.*2d at 581–82 (quoting *Adams v. United States ex rel. McCann,* 317 *U.S.* 269, 279, 63 *S.Ct.* 236, 242, 87 *L.Ed.* 268, 275 (1942)).]

Additionally, the Court declared that the trial court may appoint standby counsel to assist the pro se defendant. *Id.* at 834 n. 46, 95 *S.Ct.* at 2540, 45 *L.Ed.*2d at 581.

The Court expanded on the role of standby counsel in relation to a pro se defendant in *McKaskle v. Wiggins,* 465 *U.S.* 168, 104 *S.Ct.* 944, 79 *L.Ed.*2d 122 (1984). A "pro se defendant must be allowed to control the organization and content of his own defense, to make motions, to argue points of law, to participate in voir dire, to question witnesses, and to address the court and the jury at appropriate points in the trial." *Id.* at 174, 104 *S.Ct.* at 949, 79 *L.Ed.*2d at 131. On the other side of the scale, a pro se defendant has no absolute right to bar "standby counsel's unsolicited participation." *Id.* at 176, 104 *S.Ct.* at 950, 79 *L.Ed.*2d at 132. Further, the Court noted that standby counsel may "steer a defendant through the basic procedures of trial ... even in the unlikely event that it somewhat undermines the pro se defendant's appearance of control over his own defense." *Id.* at 184, 104 *S.Ct.* at 954, 79 *L.Ed.*2d at 137; *see also Martinez v. Court of Appeal of Cal.,* 528 *U.S.* 152, 162, 120 *S.Ct.* 684, 691, 145 *L.Ed.*2d 597, 607 (2000) (noting that "standby counsel may participate in the trial proceedings, even without the express consent of the defendant, as long as that participation does not 'seriously undermin[e]' the 'appearance before the jury' that the defendant is representing himself") (citation omitted); *State v. Davenport,* 177 *N.J.* 288, 309, 827 *A.*2d 1063 (2003) (explaining that pro se "defendant's physical presence at sidebar conferences is not an absolute requirement in

order to comport with the *Faretta* self-representation right, so long as the exclusion does not deprive the defendant of meaningful participation in the content of the sidebars through his standby counsel").

In *Crisafi, supra,* we addressed the factors the trial court should consider in determining whether to permit a defendant to waive counsel. 128 *N.J.* at 510, 608 *A.*2d 317. We explained that

> [t]o be valid such waiver [of trial counsel] must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered.
>
> [*Ibid.* (quoting *Von Moltke v. Gillies,* 332 *U.S.* 708, 724, 68 *S.Ct.* 316, 323, 92 *L.Ed.* 309, 321 (1948) (plurality opinion)).]

Thus, following *Crisafi,* when determining whether a waiver of counsel is knowing and intelligent, trial courts must inform defendant of: (1) the nature of the charges, statutory defenses, and possible range of punishment; (2) the technical problems associated with self-representation and the risks if the defense is unsuccessful; (3) the necessity that defendant comply with the rules of criminal procedure and the rules of evidence; (4) the fact that lack of knowledge of the law may impair defendant's ability to defend himself; (5) the impact that the dual role of counsel and defendant may have; and (6) the reality that it would be unwise not to accept the assistance of counsel. *Id.* at 511–12, 608 *A.*2d 317.

Recently, in the context of a death penalty case, we elaborated on the inquiry the trial court should undertake before determining whether to grant a defendant's request for pro se representation. *Reddish, supra,* 181 *N.J.* at 594, 859 *A.*2d 1173. In the examination of defendant, the trial court should inquire whether defendant will

> experience difficulty in separating his roles as defendant and counsel; whether defendant understands that he not only has the right not to testify, but also the right not to incriminate himself in any manner; whether he understands that he could make comments as counsel from which the jury might infer that he had

knowledge of incriminating evidence (and the difficulty in avoiding such comments); and whether he fully understands that if he crosses the line separating counsel from witness, he may forfeit his right to remain silent and subject himself to cross-examination by the State.
[*Ibid.*]

Additionally, we instructed that the trial court must advise defendant that if he proceeds pro se, he cannot later claim that "his self-representation constituted ineffective assistance of counsel." *Ibid.* In exploring "a defendant's claim of 'knowingness,'" the trial court should "ask appropriate open-ended questions that will require defendant to describe in his own words his understanding of the challenges that he will face when he represents himself at trial." *Id.* at 594–95, 859 *A.*2d 1173. Defendant's responses will assist the trial court in making "credibility determinations bottomed on specific facts, observations, and conclusions." *Id.* at 595, 859 *A.*2d 1173. Further, we recognized that it was for the trial court in the exercise of sound discretion to determine "whether the waiver is knowing and intelligent given the unique circumstances of each case." *Ibid.*

*Reddish* added to the *Crisafi* inquiry the requirements that: (1) the discussions should be open-ended for defendants to express their understanding in their own words; (2) defendants should be informed that if they proceed pro se, they will be unable to claim they provided ineffective assistance of counsel; and (3) defendants should be advised of the effect that self-representation may have on the right to remain silent and the privilege against self-incrimination. *Id.* at 594–95, 859 *A.*2d 1173.

■ Taken together, then, the *Crisafi/Reddish* inquiry now requires the trial court to inform a defendant asserting a right to self-representation of (1) the nature of the charges, statutory defenses, and possible range of punishment; (2) the technical problems associated with self-representation and the risks if the defense is unsuccessful; (3) the necessity that defendant comply with the rules of criminal procedure and the rules of evidence; (4) the fact that the lack of knowledge of the law may impair defendant's ability to defend himself or herself; (5) the impact

that the dual role of counsel and defendant may have; (6) the reality that it would be unwise not to accept the assistance of counsel; (7) the need for an open-ended discussion so that the defendant may express an understanding in his or her own words; (8) the fact that, if defendant proceeds pro se, he or she will be unable to assert an ineffective assistance of counsel claim; and (9) the ramifications that self-representation will have on the right to remain silent and the privilege against self-incrimination.

### B.

We turn now to determine whether the inquiries made of defendant and his responses thereto concerning waiver were sufficient for the trial court to find that he knowingly and intelligently waived his right to counsel.

Preliminarily, we agree with the comment by the Appellate Division that the trial court should engage in the colloquy with defendant in one proceeding to determine whether a waiver of counsel is knowing and intelligent. Nevertheless, in this case, in light of the numerous pretrial hearings, defendant's firm desire throughout to proceed without counsel, and his several requests to remove his counsel, we find it appropriate to consider all the pretrial hearings together to determine whether the trial court engaged in the required exchange with defendant before finding his waiver was knowing and intelligent.

We now review the *Crisafi* requirements to determine if each were satisfied.

### 1. *Nature of Charges and Range of Punishment*

At the October 16, 2000 hearing, the trial court questioned defendant to ascertain whether he understood the nature of the charges against him, the relevant statutory defenses, and the possible range of punishment. The record shows that defendant understood the charges, defenses, and possible punishment. In addition, defendant expressed knowledge at the earlier hearings of

the possible range of punishment. Clearly, the trial court complied with the first *Crisafi* requirement.

### 2. *Technical Problems Associated with Self–Representation*

■ At the October 16, 2000 hearing, the trial court did not question defendant about or inform him of the technical problems associated with self-representation. However, at the October 2, 2000 hearing, the trial court discussed some of the problems of self-representation, including the negative perceptions the jurors might form of defendant. Defendant responded that he understood those issues because he had been spending time in the law library and asked the court to order that he be allowed to spend more time in the library. Further, the record reflects that defense counsel interrupted defendant to remind him of his Fifth Amendment rights.

We are satisfied that the colloquy at the two hearings met the second *Crisafi* requirement. Although the trial court should have elaborated more on the technical problems associated with self-representation, standby counsel also informed defendant of his Fifth Amendment rights and was available to assist defendant at all times.

### 3. *Required to Comply with Rules of Procedure and Evidence*

■ At the hearing on October 2, 2000, the trial court questioned defendant about the rules of procedure and evidence. Also, the trial court reminded defendant at the October 16, 2000 hearing that he must comply with the rules of procedure and evidence. The trial court continued this theme at the November 2, 2000 hearing. Hence, the record clearly establishes the trial court complied with the third *Crisafi* requirement.

### 4. *Lack of Legal Knowledge Can Impair Defense*

■ The record does not reveal that defendant was asked whether he was aware that a lack of legal knowledge could impair his defense. However, the trial court repeatedly impressed on

defendant his need for legal assistance, which effectively conveyed the same message. Further, the record reflects that defendant understood that his lack of legal knowledge could harm his defense. He asked the trial court to increase his access to the prison law library, and, after winning the right to proceed pro se, he expressed his desire to hire a private attorney as standby counsel stating that he "honestly need[ed] some serious outside legal assistance."

The record indicates that the trial court essentially informed defendant of the importance of legal knowledge and that defendant needed an attorney. We conclude, therefore, that the trial court complied with the fourth *Crisafi* requirement.

### 5. *Impact of Dual Role on Defense*

At the October 2, 2000 hearing, the trial court asked defendant whether he had "taken also into consideration perhaps the jury's perception that may or may not work to your advantage or disadvantage by way of representing yourself." Defendant indicated that he had because he had been studying diligently in the law library. In our view, defendant's answer did not respond to the court's question. The trial court should have continued to question defendant to remove any doubt that if he were to proceed pro se, his conduct might have an adverse effect on his defense, including his right to remain silent and his privilege against self-incrimination.

Therefore, we find the fifth *Crisafi* requirement, in large measure, was satisfied, albeit not completely.

### 6. *The Unwise Decision Not to Accept Assistance*

The trial court properly indicated to defendant that proceeding pro se was inadvisable. Prior to questioning defendant on October 16, 2000, the trial court noted, "let the record reflect this is absolutely against my recommendation and clearly he needs a lawyer." Further, when the trial court granted defendant's request to proceed pro se, the court stated that "there are certain

things perhaps that you don't understand about representing yourself." At that point, defendant agreed and requested standby counsel, but remained steadfast in his quest to proceed pro se. He declared:

> So in order for me to prove my innocence, your Honor, I am the only one who will be able to cross-examine the witnesses and [Ms. Brohmi] . . . and I believe that I have known her for 33 years and I believe and I strongly believe that no one has, would be able to represent me in this case. It is not a question of two, three years. It is [a] 33 year[ ] relationship.

Although defendant had an unshakable confidence that he would be able to prove his innocence, the trial court effectively indicated his need for some legal assistance. Defendant's request for standby counsel is evidence that he understood the trial court's concerns.

Further, the trial court previously had indicated to defendant that it was unwise for him to proceed without the assistance of counsel. For example, when defendant's lawyer sought to be excused from representing defendant, the trial court advised defendant to treat his appointed lawyers well because he needed their help and it was not in his best interest to proceed without counsel. Later in that hearing, when defendant attempted to argue a motion to dismiss, the court again indicated that it was inadvisable for him to proceed pro se.

We conclude that the trial court complied with the sixth *Crisafi* requirement and that defendant was aware the court deemed his choice unwise.

## C.

Because the trial court did not fairly explain the problems that defendant would face in his dual role of attorney and client, and could not have anticipated our decision in *Reddish,* the thorough exchanges required under *Crisafi* and *Reddish* were not satisfied. Consequently, the trial court did not direct open-ended questions to defendant to ensure that he expressed his understanding of the waiver in his own words. Nor did the court explain the potential adverse impact self-representation might

have on his right to remain silent and the privilege against self-incrimination, or inform defendant that by proceeding pro se he waived any claim of ineffective assistance of counsel against himself.

However, we continue to adhere to our declaration in *Crisafi, supra,* that the failure of the trial court to engage in a thorough exchange with defendant "does not end our inquiry whether a defendant has waived counsel knowingly and intelligently." 128 *N.J.* at 512, 608 *A.*2d 317. We emphasized that because "[t]he purpose of giving a defendant an extensive warning is to ensure that he or she understands the consequences of the waiver," the "ultimate focus must be on the defendant's actual understanding of the waiver of counsel." *Ibid.* (citation omitted). Thus, we held that "[i]n the exceptional case, if the record indicates that the defendant actually understood the risks of proceeding pro se, a waiver may suffice." *Id.* at 513, 608 *A.*2d 317 (citations omitted). We found such an exceptional case in *Crisafi* and concluded that "[a]lthough the trial court failed to inform defendant of the charges against him, the sentencing alternatives, and specific pitfalls of proceeding pro se, the record indicates that defendant was sufficiently informed on those issues to waive counsel." *Id.* at 515, 608 *A.*2d 317.

This case presents another such rare exception. As noted, the trial court failed to fully inform defendant of the pitfalls created by the dual role of counsel and defendant, and the court did not anticipate our decision in *Reddish* that enhanced the *Crisafi* requirements. Nevertheless, defendant's background, his work ethic, and his unshakable determination to represent himself evidenced that he "appreciated the risks of proceeding without counsel, and that he decided to proceed pro se with his eyes open." *Id.* at 513, 608 *A.*2d 317. Defendant was an accountant and a college graduate. When the trial court explained that self-representation might disadvantage him before the jury, defendant replied that he understood that and had spent over thirteen months in the law library preparing his case. He then added

well, I do believe, if I'm not mistaken, I have learned a lot more in the U.S. courts than just going to law school. So I have learned dearly through the justice system and the U.S. courts, especially in Middlesex County. So I, I fully understand what I will be facing. And if I'm going to be found guilty, which I'm not, then I'm going to let twelve people of this state find me guilty, and then I will pay my dues if that's the case.

Defendant's response was an example of the open-ended discussion that we sought in *Reddish* and demonstrated that he had more than a passing knowledge of the justice system. The trial court questioned defendant concerning his knowledge of the consequences of a conviction and the possible sentencing range. Defendant responded that he was aware of that range and volunteered that he could be sentenced to as much as 130 years in prison.

In addition, the trial court explored potential defenses with defendant, and defendant demonstrated his knowledge of courtroom procedures. Defendant had filed several pro se motions, including a motion to dismiss the indictment and a motion for a speedy trial. He sought discovery and his standby counsel assisted him with obtaining subpoenas for witnesses. Further, the record demonstrates that standby counsel assisted defendant at both the pretrial and trial stages. During the colloquy on October 16, 2000, standby counsel interrupted, obtained permission to speak with defendant, and advised defendant of his Fifth Amendment rights. Moreover, during defendant's opening statement, when the prosecutor objected to a comment concerning semen in the victim's underwear, standby counsel assisted defendant with his response to the State's argument. Standby counsel also assisted defendant in the cross-examination and re-cross of each witness and was available to inform defendant of trial strategy throughout the trial.

Although we agree with the Appellate Division that the trial court should discuss with defendant all of the necessary requirements and admonitions in one proceeding to determine whether defendant's waiver of counsel is knowing and intelligent, we do not find that shortcoming fatal. In the present case, the essence of the *Crisafi* factors was discussed between the October

2, and October 16, 2000 hearings. The same trial court presided at those hearings, and there was no evidence in the record from which we may infer that defendant forgot any of the information the trial court conveyed to defendant in the two-week interval between the October 2, and the October 16, 2000 hearings, or at any time thereafter. We conclude that the failure to address all of the *Crisafi* factors in one proceeding, if error, was harmless beyond a reasonable doubt. *R.* 2:10–2.

The trial court was in the best position to evaluate defendant's understanding of what it meant to represent himself and whether defendant's decision to proceed pro se was knowing and intelligent. We continue to have "confidence that our courts will exercise sound discretion in determining whether the waiver is knowing and intelligent given the unique circumstances of each case." *Reddish, supra,* 181 *N.J.* at 595, 859 *A.*2d 1173. The record amply demonstrates that defendant was sufficiently informed to knowingly and intelligently waive his right to counsel. Our careful review of the record satisfies us that the trial court did not abuse its discretion in finding that defendant knowingly and intelligently waived his right to counsel.

### IV.

Defendant informs us that if the judgment of the Appellate Division is reversed, the matter should be remanded to the Appellate Division for consideration of several of his arguments that were not addressed. We agree.

Therefore, we reverse the judgment of the Appellate Division, reinstate the judgment of conviction, and remand to the Appellate Division to address any issues raised before the Appellate Division that were not reached.

*For reversal/reinstatement/remandment*—Chief Justice ZAZZALI and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA–SOTO and HOENS—7.

*Opposed*—None.