**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5918-17

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

KONSTADIN BITZAS, a/k/a
CONSTANTINE BITZAS,
CHRISTOS BITZAS, DEAN
BITZAS, CHRISTOS DEAN
BITZAS, CONSTANTI
BITZAS, DINO BITZAS,
BEAN BITZAS, and
CONSTANI BITZAS,

     Defendant-Appellant.

_____

Argued May 12, 2021 – Decided July 27, 2021

Before Judges Fuentes, Rose, and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 14-02-0228.

Eric V. Kleiner argued the cause for appellant.

Craig A. Becker, Assistant Prosecutor, argued the cause for respondent (Mark Musella, Bergen County

Prosecutor, attorney; Craig A. Becker, of counsel and on the brief).

PER CURIAM

This matter returns to us following a remand ordered in our previous opinion. State v. Bitzas, 451 N.J. Super. 51 (App. Div. 2017). In that case, we vacated defendant Konstadin Bitzas's convictions on the remaining counts of an eleven-count Bergen County indictment after the judge (initial trial judge) sua sponte dismissed with prejudice three domestic violence-related charges as a sanction for the complaining witness's recalcitrant behavior on the witness stand. Id. at 58. This court also held the initial trial judge abused her discretion by failing to grant the State's motion for a mistrial. Id. at 60.

On remand, a different judge (trial court) conducted a bifurcated trial before a jury. Prior to trial, the court granted the State's motion to dismiss the first three counts of the indictment: second-degree possession of a firearm for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count one); third-degree terroristic threats, N.J.S.A. 2C:12-3(b) (count two); and fourth-degree aggravated assault, N.J.S.A. 2C:12-1(b)(4) (count three). Accordingly, the complaining witness, P.K.,[1] did not testify at the retrial. The remaining charges pertained to the

---

[1] Consistent with our prior opinion, we use initials to protect P.K.'s privacy.

seizure of several firearms pursuant to a search warrant executed at defendant's home on September 1, 2013.

The jury found defendant guilty of second-degree possession of an assault firearm, N.J.S.A. 2C:39-5(f) (count nine); and fourth-degree possession of a large-capacity ammunition magazine, N.J.S.A. 2C:39-3(j) (counts ten and eleven). Thereafter, the same jury convicted defendant of fourth-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(a) (counts four through eight). Unlike the initial trial, defendant represented himself at the first phase of the trial under review and voluntarily absented himself from the second phase. At defendant's request, standby counsel represented him during the second phase of trial and remained his attorney through sentencing.

The trial court sentenced defendant to an aggregate eleven-and-one-half-year prison term with a parole disqualifier of six-and-one-half years pursuant to the Graves Act, N.J.S.A. 2C:43-6(c). This appeal followed.

On appeal, defendant raises the following points for our consideration:

POINT I

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DISREGARDING [DEFENDANT]'S CONSTITUTIONAL DUE PROCESS RIGHTS SURROUNDING THE DECISION WHETHER OR NOT TO TESTIFY.
(Not raised below)

3

## POINT II

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO INSTRUCT [DEFENDANT] REGARDING THE DANGERS OF SELF-REPRESENTATION AND INTERFERING WITH [DEFENDANT]'S RIGHT TO THE FREE AND UNFETTERED ASSISTANCE OF STANDBY COUNSEL.
(Not raised below)

## POINT III

[DEFENDANT]'S [CERTAIN] PERSONS CONVICTIONS REQUIRE REVERSAL BECAUSE THE TRIAL COURT FAILED TO ADEQUATELY QUESTION THE JURY, WRONGFULLY DENIED A MOTION FOR A SEVERANCE, AND FAILED TO EMPANEL A NEW JURY OR DECLARE A MISTRIAL.

## POINT IV

THE STATE VIOLATED [DEFENDANT]'S RIGHT TO BE FREE FROM UNREASONABLE SEARCHES AND SEIZURES WHEN POLICE ACTED SOLELY ON THE BASIS OF FACTS SUPPLIED BY A SOURCE WHO WAS HEAVILY INTOXICATED AT THE TIME OF THE ALLEGED OCCURRENCE.

## POINT V

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN EFFECTIVELY DENYING [DEFENDANT]'S RIGHT TO PRESENT EVIDENCE OF THIRD-PARTY GUILT.

4

A-5918-17

POINT VI

THE TRIAL COURT COMMITTED CUMULATIVE ERROR IN VIOLATING [DEFENDANT]'S [FOURTH], [FIFTH], [SIXTH,] AND [FOURTEENTH] AMENDMENT RIGHTS AND ALLOWING INADMISSIBLE HEARSAY INTO THE TRIAL. (Partially raised below)

We reject these contentions and affirm, subject to a remand on defendant's constitutional argument raised in point IV. In doing so, we find insufficient merit in the arguments raised in points III, V, and VI to warrant discussion in a written opinion. R. 2:11-3(e)(2). We focus instead – as did defendant during oral argument before us – on points I and IV. Finally, we address defendant's point II and conclude it lacks merit.

I.

Defendant did not testify at either phase of his retrial. He now contends the trial court failed to fully apprise him of his right to testify "before, during, or after either phase of retrial," requiring reversal of his convictions. Defendant's contentions are unavailing.

We have recognized "[t]he right of a criminal defendant to testify on his or her own behalf is essential to our state-based concept of due process," and may only be waived knowingly and voluntarily. State v. Ball, 381 N.J. Super. 545, 556 (App. Div. 2005) (internal quotation marks omitted). "In order to waive the

5

right to testify, a criminal defendant must be aware of the right and must make a knowing decision to give it up." State v. Lopez, 417 N.J. Super. 34, 39 (App. Div. 2010). Accordingly, "it is the better practice for the court to determine on the record whether a defendant wishes to testify or to waive that right[.]" Ibid.

To establish a waiver of counsel "when a defendant is represented by counsel, the court need not engage in a voir dire on the record." Ball, 381 N.J. Super. at 556. Rather, it is the responsibility of defense counsel, not the trial court, to advise the defendant on whether to testify. State v. Savage, 120 N.J. 594, 630 (1990).

In the first phase of trial, after the State concluded its case and the jurors were on a short break, defendant rested without testifying or presenting any witnesses. The following colloquy ensued:

> THE COURT: Okay. Sir, it is your constitutional right to remain silent. I'm going to give you a form that indicates that you are electing not to testify. And it has . . . with it a charge that you can elect to be given . . . that we can give to the jury or not, so I would like you to read this form.
>
> Do you understand that you have the right to remain silent?
>
> DEFENDANT: Yes, Judge.

THE COURT:  Do you understand if you exercise the right to remain silent that the jury cannot hold that against you?

DEFENDANT:  Yes.

THE COURT:  I can give the jury the following charge and this is up to you:

> "It is the constitutional right of a defendant not to . . . to remain silent . . . it is the constitutional right of a defendant to remain silent.  [sic]  The defendant in this case <u>chose not to be a witness</u>, and therefore elected to exercise that right.  I charge that you are not to consider for any purpose or in any manner in arriving at your verdict the fact that the defendant did not testify, nor should that fact enter into your deliberations or discussions in any manner at any time.
>
> The defendant is entitled to have the jury consider all of the evidence and he is entitled to the presumption of innocence, whether or not he testifies as a witness.  Therefore, the jury may not draw any inference of guilt from the fact that the defendant did not testify."

[(Emphasis added).]

The judge then furnished defendant with a form entitled, "Defendant's Election Not to Testify."  After reviewing the form with standby counsel and signing it, defendant requested that the trial court read the charge to the jury.

Based upon the foregoing exchange, we discern no error in the court's failure to expressly advise defendant of his right to testify on his own behalf.

7

The court apprised defendant it would inform the jury that he "chose not to be a witness" if he so agreed, thereby implicitly advising defendant of his right to testify. See State v. Bogus, 223 N.J. Super. 409, 424 (App. Div. 1988) (quoting Commonwealth v. Waters, 506 N.E.2d 859, 865 (Mass. 1987) (recognizing "[u]nlike most other rights, the right to testify is counterpoised by the right not to testify")).

Moreover, when conducting the October 23, 2017 Faretta[2] hearing to ascertain that defendant understood the implications of waiving his constitutional right to counsel, another judge (Faretta judge) inquired: "Do you understand that if the matter goes to trial and you choose not to testify on your own behalf, the jury will be instructed that your silence cannot be considered against you?" (Emphasis added). According to the plain meaning of the term, "choose" defendant was informed that he had the option to testify or remain silent. Indeed, as noted in the State's responding brief, defendant testified at both phases of his first trial, thereby evincing his knowledge of his right to testify. Under the totality of these circumstances, we discern no error here.

Similarly unpersuasive is defendant's argument that the trial court failed to inquire whether defendant intended to return to testify on his own behalf at

---

[2] Faretta v. California, 422 U.S. 806 (1975).

the second phase of trial.  After the jury verdict in the first phase of trial and before testimony commenced, defendant informed the court, in the jury's absence:  "I am obviously not an attorney and I represented myself so far to my own detriment.  And at this point, I am requesting that the court proceed without me."  After affording defendant the opportunity to confer with standby counsel, defendant advised the court that standby counsel would "take over the case at this point."

Having clearly indicated his intention to "waiv[e] the right to be present at trial," R. 3:16(b), defendant effectively relinquished his right to testify.  In any event, because standby counsel represented defendant in his absence during the second phase of trial, the trial court was under no obligation to inform defendant of his right to testify.  Bogus, 223 N.J. Super. at 424; see also Savage, 120 N.J at 630.

## II.

We turn next to the contentions raised in point IV.  In his merits brief, defendant argues the search warrant was issued without probable cause because the supporting affidavit was based solely on P.K.'s statement to law enforcement.  In essence, defendant contends the trial court erred by:  (1) incorrectly relying on the factual and legal findings of "the now defrocked and

removed" initial trial judge[3]; (2) conducting a review beyond the four corners of the search warrant affidavit; (3) failing to take testimony or creating a record to explain the reasons for its denial of the motion to suppress; and (4) relying on the statements of P.K., who was "highly-unreliable, highly-unstable, and . . . heavily-intoxicated at the time of the alleged incident." In his reply brief, defendant further asserts the affidavit contains "a false material fact" regarding defendant's criminal history, disclosed for the first time in the State's responding brief. Defendant seeks reversal of his convictions based upon the trial court's errors and prosecutorial misconduct.

During the April 9, 2018, pretrial conference, defendant advised the trial court that he had not changed his mind about proceeding pro se; he appeared with standby counsel. Because phase one of the retrial was limited to the charges pertaining to the weapons and ammunition seized pursuant to the search warrant, the State indicated it would refrain from introducing any evidence regarding defendant's arrest, which was based on P.K.'s domestic violence allegations. However, defendant refused to stipulate to the validity of the search warrant, claiming he "proved at trial the first time that the charges were false"

---

[3] The initial trial judge was removed from judicial office on September 26, 2018. Matter of DeAvila-Silebi, 235 N.J. 218 (2018).

and he "was falsely arrested." Arguing "the remaining counts [we]re fruit of the poisonous tree," defendant moved to dismiss all charges.

Following the State's representation that the initial trial judge held a hearing on the validity of the warrant – and that issue was not raised on appeal from the first jury verdict – the trial court denied defendant's oral application. In doing so, the court determined the initial judge's decision was the "law of the case." The court also noted the search warrant was "not the reason why the Appellate Division sent this [trial] back."

On April 10, 2018, defendant again orally moved to dismiss the charges on the same basis. The court denied the motion, again citing law of the case.

Undeterred, on April 12, 2018, defendant orally moved for reconsideration of the trial court's decision, claiming he omitted "some important information" from his previous arguments. Defendant maintained the search warrant issued on September 1, 2013 was invalid. He argued that the day before the search warrant was issued, members of the Fort Lee Police Department (FLPD), who responded to defendant's home on P.K.'s report of domestic violence, "determined she was lying and [he] was telling the truth." The officers did not arrest defendant at that time. Instead, they brough P.K. to the hospital because she was "intoxicated, high on drugs, and out of control."

11

Defendant claimed that when P.K. was released from the hospital, she reported to the FLPD and made the same allegations to Detective Michele Morgenstern, who did not respond to defendant's home the previous night. Defendant contended that had Morgenstern properly investigated the allegations, she would have known "these allegations were false."

Following argument, the trial court reserved decision, to conduct a review of the temporary restraining order (TRO) issued to P.K.; the police report regarding the domestic violence incident; P.K.'s videorecorded statement to Morgenstern; photographs of P.K.'s injuries; the search warrant and supporting affidavit; and the transcript of the suppression hearing before the initial judge. On April 16, 2018, the court issued an oral decision denying the motion. Among other findings, the court noted the search warrant affidavit summarized P.K.'s videorecorded statement about the assault and that defendant "had a prior history of firearms possession and he had firearms in his possession in the past."

Referencing the initial trial judge's findings, the court found defendant had "made the same allegations regarding the victim's intoxication[,]" including that the police transported P.K. to the hospital based on "her extreme

intoxication."[4] The trial court also noted the initial judge's legal conclusion "that the police do not have to prove that the victim was assaulted or threatened" to sustain a probable cause finding for issuance of the search warrant.

Citing our Supreme Court's decision in State v. Chippero, 201 N.J. 14 (2009), the trial court concluded defendant failed to demonstrate the warrant was issued without probable cause or was otherwise unreasonable. Ultimately, the court reiterated its earlier determination that the validity of the warrant was the law of the case.

"The law-of-the-case doctrine 'is a non-binding rule intended to "prevent relitigation of a previously resolved issue"' in the same case." State v. K.P.S., 221 N.J. 266, 276 (2015) (quoting Lombardi v. Masso, 207 N.J. 517, 538 (2011)). "[O]nce an issue has been fully and fairly litigated, it ordinarily is not subject to relitigation between the same parties either in the same or in subsequent litigation." Id. at 277 (internal quotation marks omitted). The doctrine "is subject to the exercise of sound discretion." Ibid.

---

[4] According to the transcript of the initial judge's decision, defense counsel orally moved to suppress the evidence seized pursuant to the search warrant on the first day of trial. The initial judge requested and reviewed the affidavit in court and denied defendant's request for a hearing. On an unrelated matter later in the hearing, defendant told the court he was "never" found "guilty of a weapons offense."

A search executed pursuant to a warrant enjoys the presumption of validity. State v. Marshall, 199 N.J. 602, 612 (2009). "Doubt as to the validity of the warrant 'should ordinarily be resolved by sustaining the search.'" State v. Keyes, 184 N.J. 541, 554 (2005) (quoting State v. Jones, 179 N.J. 377, 389 (2004)). The defendant bears the burden of challenging the search, and must "prove 'that there was no probable cause supporting the issuance of the warrant or that the search was otherwise unreasonable.'" Jones, 179 N.J. at 388 (quoting State v. Valencia, 93 N.J. 126, 133 (1983)). Probable cause exists where there is "a reasonable ground for belief of guilt" based on facts of which the officers had knowledge and reasonably trustworthy sources. Marshall, 199 N.J. at 610 (quoting State v. O'Neal, 190 N.J. 601, 612 (2007)).

Further, "[w]hen reviewing the issuance of a search warrant by another judge, the [motion judge] is required to pay substantial deference to the [issuing] judge's determination." State v. Dispoto, 383 N.J. Super. 205, 216 (App. Div. 2006) (citing State v. Kasabucki, 52 N.J. 110, 117 (1968)), modified on other grounds, 189 N.J. 108 (2007). Nonetheless, "under certain circumstances, a search warrant's validity may be questioned, in which case an evidential hearing may be afforded." Ibid. (citing Franks v. Delaware, 438 U.S. 154, 155-56 (1978)).

Where, as here, a defendant challenges the veracity of a search warrant affidavit, a Franks hearing is required only "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause . . . ." 438 U.S. at 155-56. The defendant "must allege 'deliberate falsehood or reckless disregard for the truth,' pointing out with specificity the portions of the warrant that are claimed to be untrue." State v. Howery, 80 N.J. 563, 567 (1979) (quoting Franks, 438 U.S. at 171).

To obtain a Franks hearing, a defendant's allegations should be supported by affidavits or other reliable statements; "[a]llegations of negligence or innocent mistake are insufficient." State v. Broom-Smith, 406 N.J. Super. 228, 241 (App. Div. 2009) (quoting Franks, 438 U.S. at 171). The allegations "must be proved by a preponderance of the evidence." Howery, 80 N.J. at 568. A defendant must also demonstrate that absent the alleged false statements, the search warrant lacks sufficient facts to establish probable cause. Ibid. If a search warrant affidavit contains sufficient facts establishing probable cause even after the alleged false statements are excised, a Franks hearing is not required. Franks, 438 U.S. at 171-72.

15

A misstatement is considered material if, when excised, the warrant affidavit "no longer contains facts sufficient to establish probable cause" in its absence. Howery, 80 N.J. at 568 (citing Franks, 438 U.S. at 171). "If at such inquiry the defendant proves [a] falsity by a preponderance of the evidence, the warrant is invalid and the evidence seized thereby must be suppressed." Id. at 566.

Defendant further contends the affidavit omitted facts concerning the FLPD's investigation. Similarly, the Franks "requirements apply where the allegations are that the affidavit, though facially accurate, omits material facts." State v. Stelzner, 257 N.J. Super. 219, 235 (App. Div. 1992). An omission is deemed material if the issuing judge likely would not have approved the warrant if the judge had been apprised of the omitted information. State v. Sheehan, 217 N.J. Super. 20, 25 (App. Div. 1987). However, "[t]he test for materiality is whether inclusion of the omitted information would defeat a finding of probable cause; it is not . . . whether a reviewing magistrate would want to know the information." State v. Smith, 212 N.J. 365, 399 (2012).

If probable cause exists despite the errant information, the search warrant remains valid and an evidentiary hearing is unnecessary. See Sheehan, 217 N.J. Super. at 25. If the defendant meets the requisite threshold burden, however,

16

the court must conduct a hearing.  Ibid.  In turn, "[i]f at such inquiry the defendant proves by a preponderance of the evidence that the affiant, deliberately or with reckless disregard for the truth, excluded material information from the affidavit which, had it been provided, would have caused the judge to refuse to issue the warrant, the evidence must be suppressed."  Id. at 26.

Because a search warrant is presumed valid, an "appellate court's role is not to determine anew whether there was probable cause for issuance of the warrant, but rather, whether there is evidence to support the finding made by the warrant-issuing judge."  Chippero, 201 N.J. at 20-21.  The issuing judge's probable cause determination "must be made based on the information contained within the four corners of the supporting affidavit, as supplemented by sworn testimony before the issuing judge that is recorded contemporaneously."  Schneider v. Simonini, 163 N.J. 336, 363 (2000) (citing State v. Novembrino, 105 N.J. 95, 128 (1987)).

Against this legal backdrop, we turn to defendant's challenges, recognizing the trial court liberally considered his orally deficient motion because was he was self-represented.  See R. 3:5-7(b) (requiring a defendant to file the initial brief when "the search was made with a warrant").  Further, the

court essentially converted defendant's motion to dismiss the remaining charges of the indictment to a motion to suppress the evidence seized pursuant to a valid warrant.

However, because the court's review included P.K.'s videorecorded statement, which apparently was not furnished to the warrant-issuing judge, it exceeded the four corners of the search warrant affidavit. Nonetheless, that belated claim of error was not "clearly capable of producing an unjust result," R. 2:10-2, here in that the record before us reveals the same municipal court judge granted P.K.'s September 1, 2013 application for a TRO and seizure of the same weapons under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35, based on the same allegations of domestic violence. On remand, however, the court shall not consider P.K.'s videorecorded statement in determining whether probable cause existed for issuance of the search warrant, but can consider any testimony given by P.K. in support of her application for the TRO.

Our concern, however, pertains to the affiant's apparently erroneous description of defendant's criminal record and the State's late disclosure of that issue. In his sworn affidavit, an FLPD detective certified: "During my investigation, I was informed by . . . Morgenstern that [defendant] has a criminal

history for possession of firearms and has had firearms in his residence on a previous occasion."

Referencing defendant's presentence report included in the State's appendix, the State embedded a footnote in its responding brief, addressing that statement, as follows: "While defendant's criminal history is extensive, the State notes that none of the dispositions directly note firearms possession." Referencing the search warrant and TRO, the State claims the issuing judge "did not rely on defendant's criminal history of this past allegation of firearms in issuing the search warrant. . . . But he did consider defendant's 'extensive criminal history' in issuing the TRO."

We are troubled by the State's late disclosure for several reasons. Initially, the basis of the State's assumption that the issuing judge did not rely on the affiant's description of defendant's criminal history – as it relates to possessing firearms – is unclear. The issuing judge's notation on the TRO that defendant had an "extensive criminal history" may well belie such assertion.

Secondly, the State's disclosure neither was presented to the trial court nor issuing judge – although as noted above defendant attempted to advise the initial judge that he was never convicted of weapons offenses. We recognize defendant neither raised this precise issue pro se before the trial court nor when represented

19

by counsel before the initial judge. We also note that defendant did not question the validity of the search in the appeal challenging his conviction in the first trial. Nonetheless, we are satisfied the appropriate remedy here is to remand the matter pursuant to Franks and its progeny.

On remand, the parties shall provide the trial court with their submissions on appeal. The court may, in its discretion, order additional briefing. The court shall thereafter determine whether a Franks hearing is warranted in view of the governing law as applied to the represented facts. In view of the State's belated disclosure, the court shall make its own findings of fact and conclusions of law, distinct and separate from those of the initial trial judge, who did not "fully" consider the issues now illuminated. See K.P.S., 221 N.J. at 277. The court shall also consider anew defendant's argument concerning the reliability of P.K.'s statements supporting the warrant.

In view of our decision, we need not reach defendant's argument that the court improperly relied upon the initial judge's findings here, where that judge was subsequently removed from office. However, we agree it is prudent based on the newly-disclosed information – and the history of this case – for the trial court to issue independent findings of fact and conclusions of law.

20

Should the trial court ultimately determine the warrant is invalid, the evidence seized from defendant's residence shall be suppressed and a new trial granted. If, however, the warrant's validity is established, we affirm defendant's convictions.

## III.

We turn briefly to the contentions raised in defendant's point II. Defendant argues the Faretta judge and the trial court failed to engage in the required colloquy to determine whether he knowingly and voluntarily waived his right to counsel and that these errors require a new trial. Defendant further contends the trial judge erroneously limited standby counsel's role during the second phase of the bifurcated trial. We disagree.

A trial court's determination as to whether a defendant "knowingly and intelligently waived his right to counsel" is reviewed for abuse of discretion. State v. DuBois, 189 N.J. 454, 475 (2007). That is because a trial court is "in the best position to evaluate defendant's understanding of what it meant to represent himself and whether defendant's decision to proceed pro se was knowing and intelligent." Ibid.

"[A] defendant has a constitutionally protected right to represent himself in a criminal trial." Faretta v. California, 422 U.S. 806, 816 (1975).

21

Nonetheless, because a waiver of the right to counsel constitutes a relinquishment of "many of the traditional benefits associated with" that right, it must be made "knowingly and intelligently." Id. at 835. When a criminal defendant requests to proceed pro se, the judge must "engage in a searching inquiry" to determine whether the defendant understands the implications of the waiver. State v. Crisafi, 128 N.J. 499, 510 (1992).

Our Supreme Court in Crisafi, and later in State v. Reddish, 181 N.J. 553 (2004), provided trial courts with a framework to determine if a defendant has knowingly and voluntarily waived his right to counsel in favor of proceeding pro se. "Taken together," Crisafi and Reddish require

> the trial court to inform a defendant asserting a right to self-representation of (1) the nature of the charges, statutory defenses, and possible range of punishment; (2) the technical problems associated with self-representation and the risks if the defense is unsuccessful; (3) the necessity that defendant comply with the rules of criminal procedure and the rules of evidence; (4) the fact that the lack of knowledge of the law may impair defendant's ability to defend himself or herself; (5) the impact that the dual role of counsel and defendant may have; (6) the reality that it would be unwise not to accept the assistance of counsel; (7) the need for an open-ended discussion so that the defendant may express an understanding in his or her own words; (8) the fact that, if defendant proceeds pro se, he or she will be unable to assert an ineffective assistance of counsel claim; and (9) the ramifications that self-

22

> representation will have on the right to remain silent and the privilege against self-incrimination.
>
> [DuBois, 189 N.J. at 468-69.]

This approach was recently reaffirmed by the Court in State v. Outland, 245 N.J. 494, 506 (2021).

In his merits brief, without the benefit of the Faretta hearing transcript, defendant contends the Faretta judge's inquiries set forth in his preliminary hearings were inadequate. In his reply brief, after receiving the transcript of the comprehensive Faretta hearing, defendant limits his contentions to the Faretta judge's failure to: (1) advise defendant "that testifying on [his] own behalf w[ould] be difficult if acting pro se"; and (2) sufficiently probe defendant "to ensure that he . . . [w]as capable of understanding the legal complexities involved in this [bifurcated trial]." Without citation to any authority, defendant further contends the trial court failed to reexamine defendant as to his self-representation decision. The record belies defendant's claims.

During the third status conference before the Faretta judge, the judge thoroughly examined defendant pursuant to the Crisafi/Reddish requirements. In sum, the judge probed defendant about the voluntariness of his decision and the perils of self-representation; thoroughly reviewed each charge of the indictment and defendant's sentencing exposure; and reviewed the trial process

23

and the difficulties a non-lawyer encounters in following the court rules and legal concepts.

At the conclusion of the <u>Faretta</u> hearing on October 23, 2017, the judge issued a cogent oral decision stating his factual and legal findings. Given our discretionary standard of review, <u>DuBois</u>, 189 N.J. at 475, we discern no basis to disturb his decision. We simply add that the judge was not required under the <u>Crisafi/Reddish</u> factors to expressly inform defendant about the difficulties of "testifying" pro se. Instead, the judge complied with factor nine by explaining the "risk of self-incrimination by the very nature of questions that [he would] pose to witnesses."

Affirmed in part; remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION